McCuen adsm. Ludlum.

CITED *in Browning* v. *Flanagin,* 2 *Zab.* 574.

---

## McCUEN ADSM. LUDLUM.

In case for words.

### On demurrer to declaration.

The words "He has broken open my letters in the Post Office;" spoken of the plaintiff, with the averments of his being post master of, &c. meaning that plaintiff had been guilty of &c., do not in their usual and common sense acceptation, import that the plaintiff *unlawfully* and in violation of his official duty, broke open the defendant's letters, and are not actionable.

Slanderous words must charge a party with an offence not only indictable, but, of moral turpitude.

The mere opening of letters, whether from curiosity or wantonness does not involve the idea of moral turpitude, or render a man infamous, in the sense which the law imputes to those terms, when it is settling the doctrine of slander, at the common law.

An *innuendo* cannot *extend* the sense of words spoken, beyond their natural meaning, unless something is put upon the record, to which the words spoken may be referred, and, by which, they may be explained in the *innuendo.*

In relation to private persons, no words are actionable, however penal the act charged, may be, unless they impute to him, an act that is *malum in se* and not merely *malum prohibitum.*

Nor is every act which is *malum in se,* such crime as a false charge of which, will sustain an action for slander.

The rule is, the words must either have produced a temporal loss to the

plaintiff in special damage sustained; or they must convey a charge of some act *criminal in itself,* and indictable as such, and subjecting the party to an infamous punishment; or, some offence involving moral turpitude.

*W. N. Jeffers, for plaintiff.*
*J. S. Green,* for defendant.

This case was submitted to the Court at November Term last, on a state of the case, and briefs of counsel.

The case is sufficiently stated in the opinion delivered by the Chief Justice.

*Mr. Jeffers* referred the Court to the *Act of Congress,* of March 3, 1825, *sect.* 2; *Act of* 1836, *Gordon's Dig.* 81; 3 *Wilson,* 186; *Comyn's Dig. Tit. Case for defamation,* F 20; *Broker* v. *Coffin,* 5 *Johns.* 188; *Rev. L.* 701, *s.* 2; 3 *Archb. Bl. Com.* 116.

*Mr. Green* cited 3 *Story's L. U. S.* 1991 *sec.* 21; *Gordon's Dig.* 725, 5 *Johns.* 188; 4 *Bl. Com.* 376; *Rev. Laws,* 244.

HORNBLOWER, CH. J. This case comes before the Court upon a demurrer to the first count in the declaration. After the usual averment that before and at the time &c., the plaintiff was an honest and upright man, &c., the declaration avers, that for a long time before, and at the several times, &c., the plaintiff was, and still is Postmaster of the United States for Deerfield street, in the county of &c., and that the defendant well knowing the premises, but contriving &c., to injure the plaintiff in his good name, &c., and to bring the plaintiff into great disgrace, &c. *as such Postmaster,* amongst all his neighbors &c., on &c., at &c., in a certain discourse, which the defendant had of and concerning the plaintiff, in the execution of his said office of Postmaster, falsely and maliciously spoke, &c., of and concerning the plaintiff in the exercise of his said office as Postmaster, in the presence, &c., the words following: " He (meaning the plaintiff) has broken open my letters in the Post Office" (meaning that the plaintiff had been and was guilty of breaking open sealed letters addressed to the said defendant, and which came to the hands of the plaintiff as Postmaster.) Upon this demurrer, two questions are raised by the defendant's counsel, viz:

1st. Do the words as laid in the declaration, import any crime? and

2dly. If they do import an offence against the act of Congress, are they on that account, slanderous and actionable?

In answer to the first question, I would remark, that to say of any man, whether a Postmaster or not, that he broke open my letters in the Post Office, does not in itself and without reference to any statutory regulations upon the subject, convey the idea that he has been guilty of any crime exposing him to infamous punishment. He may have broken them open, by authority of law; by accident or inadvertency; or by my request or permission. The mere opening of letters, whether for the gratification of idle curiosity, or as an act of wantonness, does not involve the idea of moral turpitude, or render a man infamous, in such a sense, as the law imputes to those terms, when it is settling the doctrine of slander at the common law. Such conduct is indeed a violation of confidence, and a departure from the rules of propriety, but it is not every impeachment of a man's motives, nor every imputation of ungentlemanly and dishonorable conduct, that is actionable.

It is true, these words are charged to have been spoken of the plaintiff, by the defendant, when he, the defendant was speaking of the plaintiff " in the exercise of his office ;" and therefore, if the words used, in their ordinary acceptation, imputed to him a want of official integrity; or even of common honesty, I should be inclined to think they were actionable; as in *Ashton* v. *Blagrove*, 2 *Ld. Raym*, 1369, where the defendant, speaking of the plaintiff as a Justice of the Peace in the execution of his office, said he was a rascal, a villain and a liar : the court held, that it was the same as if the defendant had said, the plaintiff was a rascal in the execution of his office : a villain in the execution of his office, and a liar in the execution of his office. But to say of a Post-master, that he opened my letters in the exercise of his office, does not *ex vi termini*, or in common parlance, convey any charge of official misconduct.

By the act of Congress, 3 *Story's laws*, 1991, *sec.* 21, *Gordon's Dig.* 725, it is enacted, that if any person employed in any department of the Post Office, shall *unlawfully delay*, *detain* or *open* any letter, &c., he shall for every such offence, be fined, not

exceeding 300 dollars, or imprisoned, not exceeding six months, or both, &c. Suppose now, the words charged in the declaration had been, that the plaintiff, had *delayed* or *detained*, the defendant's letters in the Post Office; could it be pretended that such words are actionable in themselves? And yet it is no more *criminal* under the statute, to *open* a letter, than to *delay* or *detain* one. Nor is it *criminal* under the statute, to do either, unless it is *unlawfully* done.

The question comes then to this, do the words laid to have been spoken of the plaintiff in the execution of his office in their usual and common acceptation, import that he, *unlawfully*, and in violation of official duty, broke open the defendant's letters? I think they do not. I think the Court cannot judicially understand them so, except by an *inference*, not warranted by any averment in the declaration. If there had been a *colloquium*, of and concerning the malconduct of the plaintiff, in the execution of his office, or of and concerning his *unlawfully* breaking open the defendant's letters; then I admit the words spoken by the defendant, might by a proper *innuendo*, be made to appear, on the record, to mean that the plaintiff had *unlawfully* broken open the letters. The innuendo in this declaration does not indeed, attempt to make the words mean an *unlawful* breaking open of the letters; it simply says, " meaning that the plaintiff had been guilty of breaking open, &c." But if it had been " meaning that the plaintiff had *unlawfully* broken open, &c." it could not have helped the plaintiff in this case.

The office of an innuendo is often mistaken by pleaders. It cannot extend the sense of the words spoken, beyond their own natural meaning, unless something is put upon the record, to which the words spoken may be referred, and by which, they may be explained by the innuendo, *Rex* v. *Horne, Cowp.* 684, as in an action for saying of another, " He has burnt my barn ;" the plaintiff cannot by way of *innuendo,* say, meaning " my barn full of corn ;" for that would not be an *explanation* of what was said before, but an *addition* to it. But if it had been previously averred, that the plaintiff had *a barn full of corn*, and that in a discourse about the barn, the defendant had spoken the words ; an innuendo referring the words to that barn, and explaining them to mean, *he burnt my barn full of corn*, would have been good.

*Barham's case*, 4 *Co.* 20. So, it is not actionable to say to a man, " he has sworn false," or, " that forsworn himself," unless the words are coupled by an innuendo, with a previous statement in the declaration, that the plaintiff had been legally sworn as a witness, or testified to something upon an oath duly administered to him.    *Holt* v. *Scholefield*, 6, *T. R.* 691 ; *Savage* v. *Robery, Salk.* 694 ; *Hawkes* v. *Hawkey*, 8 *East.* 427, in which last case, it was held, even after verdict, that where the words are ambiguous and equivocal, and require explanation, by reference to some extrinsic matter to make them actionable ; it must not only be predicated, that such matter existed, but also, that the words were spoken of and concerning that matter.

It is true, words are not to be taken in *mitiori sensu ;* but on the other hand, they are not to receive a forced and unnatural construction, in order to sustain the action, when in the exercise of that charity, " which thinketh no evil," they may be understood in an innocent sense.    That the declaration charges the defendant, in the introductory part of it, with speaking the words maliciously, and with an evil intent, does not help the matter : the same sort of introduction is found in every declaration for words spoken, and if that could supply the want of a proper colloquium, and give point and meaning to the words spoken, so as to make them actionable, the objections taken in the cases on this subject, could not have prevailed.    Upon the whole, therefore, I am of opinion, that the words laid in the first count of the plaintiff's declaration, as they are there laid, are not actionable, inasmuch, as they do not in themselves import, that the plaintiff broke open the letters " unlawfully " and in violation of official duty.

What I have said, renders it unnecessary to express any opinion on the second point ; but if the words as laid, amounted to a charge that the plaintiff had violated his *official* duty, I think upon the authority of *How* v. *Prinn, Salk.* 694, and of what was said by the Court in *Onslow* v. *Horne*, 3 *Wils.* 177, 186, and other cases, they would be actionable.    Nevertheless, in relation to private persons, I think no words are actionable, however penal the act may be, with which they charge the plaintiff, unless they impute to him, an act which is *malum in se*, and not merely *malum prohibitum*.    For if the Legislature think proper for

mere political reasons, to annex an infamous punishment to an act, in itself innocent or indifferent, I do not think that charging a man with the commission of that act, would be actionable, unless special damages ensued. Nor on the other hand, if the words import an act, *malum in se*, are they always actionable on that account. An assault and battery is *malum in se*, and may subject a man to fine and imprisonment, and yet it was never supposed that an action would lie for charging a man with having committed an assault and battery. The rule perhaps is as well laid down by Spencer, Chief Justice, in *Vanness* v. *Hamilton*, 19 *Johns.* 367, as in any case to be found. He says, "the words must either have produced a temporal loss to the plaintiff, by reason of special damage sustained by their having been spoken, or they must convey a charge of some act, *criminal in itself*, and indictable as such, and subjecting the party to an infamous punishment: or, they must impute some indictable offence, involving moral turpitude." I think there should be judgment for defendant on demurrer.

DAYTON, J. It is a matter of some surprise, that at this day, there should remain so much uncertainty in the books, as to what class of words are, and what are not, in themselves slanderous.

Some of the old cases hold that to charge a person with an *indictable offence*, is slanderous; but this clearly cannot be the true test. It is no slander to say of a man that he has committed an assault and battery. And so we may charge the commission of many other offences indictable as well at common law as by statute, and yet incur no legal liability. There is perhaps no rule more just and reasonable than that laid down in *Brooker* v. *Coffin*, 5 *John. R.* 188, and I am inclined to adopt it, though its application may make the same words (a charge of fornication) slanderous under our statute, which were not in that case, so considered, under the New York act.) The court in that case, say in substance, that the decisions are so loose and contradictory, as to afford no distinct rule; and that they therefore, upon the fullest consideration, adopt this rule as the safest, and one warranted as they think, by the cases. "In case the charge if true, will subject the party charged, to any indictment for a crime involving moral turpitude, or subject him to an infamous pun-

McCuen adsm. Ludlum.

ishment, then the words will be in themselves, actionable."

This is a limitation of the rule as laid down in some of the cases, but I fully concur in a remark of Justice Gibson, who says, (3 *Serjt. & R.* 255,) the distinction laid down in this case, in New York, appears to be a sound one, and to be founded in reason and good sense. I am aware that there are modern cases, which lay down the rule in broader terms : as in *Miller* v. *Parish*, 8 *Pick. Mass. R.* 384, where it is held that words are actionable, if they charge an offence, which if proved, may subject the party to a punishment, though not ignominious, but which brings *disgrace* upon the party falsely accused. This is the opinion of a very enlightened court, but whatever may have been its justice, as applied to the words then under consideration (a charge of fornication) I cannot help thinking that as a general rule, it lacks limit and precision.

The words ignominious or infamous punishment, have a known and definite meaning in the law. Mutilation, whipping, branding, pillory, hard labor in the House of correction, or otherwise, and the stocks, are of this character ; 1 *Chitty C. L.* 600 : 4 *Black.* 377 : but what species of offence or punishment, brings " disgrace " with it, may vary according to the judgments of those who pass upon the question. Cudgel-play, fisticuff, and duelling, are disgraceful in the eyes of some, though honorable in the eyes of others. So a punishment for one of these offences, by imprisonment merely, may and in most cases does in the eye of the world, bring "disgrace" with it, though it is not legally "infamous." The rule adopted in New York, is expressed with precision. The offence charged must be a *crime*, involving *moral turpitude*, or subject to *infamous* punishment.

By the 16th *section* of the act of Congress, entitled "An act to establish the Post Office and Post Roads within the United States," 3 *Vol. U. States L.* 50, it is enacted, " That if any person employed in any of the Departments of the general Post Office, shall unlawfully detain, delay or *open* any letter, &c., with which he shall be entrusted, or which shall have come to his possession and which are entitled to be conveyed by post, &c., " Every such offender, being thereof duly convicted, shall for every such offence, be fined not exceeding three hundred dollars, or imprisoned not exceeding six months, or both, according to the

circumstances and aggravations of the offence." This act makes it criminal in a Postmaster to *delay, detain* or *open* a letter *unlawfully,* &c. Admitting for the sake of the argument *merely,* that a false and malicious charge that the plaintiff opened the defendants' letters, is tantamount to a charge that he opened them unlawfully, was there necessarily any *moral turpitude* in the act? I think not. The charge does not *necessarily* imply that it was done with an immoral intent, with a design to commit a fraud or criminal wrong to the party. It may have been from an impertinent curiosity, or some other unworthy, though not criminal motive; and if so, there was no *moral* turpitude in the act. It was the essence of meanness, but its perpetrator like an eaves-dropper, and such like contemptible offenders, violated not a moral duty, but one of the proprieties of conventional life.

But it is said that these words were used by the defendant, in reference to the plaintiff, *in his office of Postmaster,* a place of profit and emolument, and are therefore slanderous. It is true that many words which are not slanderous when applied to private persons, become so, when applied to them in their official character; but then the words must impute a defect of understanding, ability or integrity, to make them so; 1 *Salk.* 695; *B. N. P.* 4; *Holt on L.* 208; 3 *Black.* 123; *N,* 14. As to say of a person in a judicial office, " he is but a half-eared justice, he will hear but one side," *Cro. Car.* 223; or of a person in an office of trust, " he is a corrupt man," *Cro. Jac.* 65; of a church warden, " he is a knave and hath cheated the parish of twenty pounds," *Carter* 1.

Had the defendant charged that the plaintiff had broken open his letters, with some fraudulent intent, or corrupt design, it would have imputed a want of integrity, and been actionable: but the naked charge that the plaintiff, being Post Master, &c., had broken open his letters, does not, *ex vi termini,* impute any thing of the kind. A seal, to every man of proper feelings, is little less than a sacred thing; but it derives its character not from force of public honesty, but public honor; which has always protected it in every age and country. It is no more a breach of integrity, to open a letter and inspect its contents from an impertinent curiosity, than it would be to open the door of a

house, and from the same motive, conceal one's self within ear-shot of a private conversation.

Both acts would be excessively mean, but neither, could properly be called dishonest.

The first count is bad and judgment must be rendered for the defendant on demurrer.

FORD, J. and NEVIUS, J. concurred.

*Judgment for defendant, on demurrer.*