183 N.J. Super. 101 (1981)
443 A.2d 260
KOTOK BUILDING, A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE CHARVINE COMPANY AND CHARLES CURCIO, DEFENDANTS.
Superior Court of New Jersey, Law Division Cumberland County.
Decided December 17, 1981.
*102 Lars S. Hyberg for plaintiff (Valore, McAllister, Aron & Westmoreland, attorneys).
Joseph P. Testa for defendants (Testa & Testa, attorneys).
EDWARD S. MILLER, J.S.C.
This case presents the question of the degree of particularity with which an action for libel or slander must be pleaded and whether this requirement has been relaxed by our modern practice. It necessarily requires an exploration into the issue of "fact pleading" versus "notice pleading."
The specific question presented is whether plaintiff, defendant in a counterclaim, is entitled to summary judgment on paragraph four of the second count of the counterclaim, which alleges:
Plaintiff has falsely and maliciously, and for the purpose of injuring the defendant/counterclaimant in his good name, fame and credit both as an *103 individual and as a businessman, spoke [sic] of and concerning the said counterclaimant, in slanderous and vile names, and has defamed the reputation and name of said counterclaimant.
Plaintiff moves for summary judgment, principally upon the failure to recite the details of the alleged slander and its failure to indicate what damages plaintiff suffered as to its business reputation. Defendant argues that summary judgment is precluded by the existence of factual issues as to the circumstances of the alleged slander and as to the magnitude of counterclaimant's business losses.
The second count of the counterclaim fails to recite the allegedly defamatory words, the circumstances in which they were uttered, whether a third party heard them, and what damaging effect their utterance had upon defendant-counterclaimant's business or professional reputation. It is, in short, wholly conclusory. It is, therefore, fatally defective.
Regardless of the form of pleading, actions in defamation have traditionally been treated as sui generis. The common law pleading requirements of innuendo, while sometimes carried to an extreme degree, cf. McCuen adsm. Ludlum, 17 N.J.L. 12 (Sup.Ct. 1839), require sufficient specificity to delineate the facts of the wrong complained of so that the case may be properly defended. Modern pleadings still require this, National Bowl-O-Mat Corp. v. Brunswick Corp., 264 F. Supp. 221, 226 (D.N.J. 1967), Prosser, Torts (4 ed.), c. 19, § 111 at 746 et seq., a defamation case.
With the advent of our new and improved court system on September 15, 1948 the Supreme Court determined to overhaul and refurbish the rules of practice and procedure in this state. Following an intensive and dynamic effort by a group of task forces, what is now our current set of rules was adopted. Basically they follow the Federal Rules of Civil Procedure then in existence, with certain modifications, some because of the fact that state courts operate in some areas while the federal courts do not and some simply because of a difference in *104 philosophy between the Supreme Court and the framers of the federal rules.
One of the significant differences between the federal and state rules is in the philosophy of pleading. Federal Rule 8(a) requires that a pleading which sets forth a claim for relief should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a) was never adopted in New Jersey. In drafting R.R. 4:8-1, the precursor to the current R. 4:5-2, the New Jersey Supreme Court used as its model, not the Federal Rules of Civil Procedure, but rather the Practice Act of 1912, Schnitzer and Wildstein, 2 N.J. Rules Service, Annotations and Comment, AIV-134, 135. Schnitzer and Wildstein distinguish the federal system of "notice" pleading from the New Jersey system of "cause of action" pleading:
The rival systems of practice contrast "notice" pleading with "cause of action" pleading. Under the former, a general statement of the nature of the plaintiff's grievance will suffice to inaugurate the controversy. Under the latter method, the failure of the complaint to state a "cause of action" may terminate the litigation before it can be ascertained whether the plaintiff has a "cause of action". [2 Schnitzer and Wildstein, AIV-134, 135; emphasis in the original.]
It must be reiterated that the New Jersey Rules did not spring forth fully fashioned as did Minerva from the brow of Jove. That they were indeed the product of a group of task forces working strenuously over a ten-month period, see Vanderbilt, "The New Rules of the Supreme Court on Appellate Procedure," 2 Rutg.L.Rev. 1 (1948); Woelper, "The Judicial Conference and Its Role in the Rule Making Process," 5 Rutg.L.Rev. 344 (1951), and Schnitzer "Civil Practice and Procedures," 6 Rutg.L.Rev. 351, 357 (1951).
As evidence of the adherence to "cause of action" pleading in New Jersey, Schnitzer and Wildstein cite Grobart v. Society for Establishing Useful Mfrs., 2 N.J. 136 (1949), for the following rules:
(1) the object of pleadings is to define the issues to be tried; (2) the new state practice, in common with the former procedure, requires the statement of a cause of action; the principal change is that the statement is now to be simple, concise and direct; and (3) the essential elements of the statement of a cause of action, both as to substantive law and pleading, remain the same as at common law. [2 Schnitzer and Wildstein, AIV-134, 135]
*105 In Grobart, plaintiff mill owners sued for damages which plaintiffs claimed had resulted from the transfer of corporate defendant's property. Upon judgment on the pleadings for defendants, plaintiffs appealed on the ground that they should have been allowed to amend their already amended complaint. Holding that plaintiffs' amended complaint could not be enlarged to include a new cause of action, the court stated:
... the objective of reaching an issue of law or of fact in two or at the most three simple pleadings has been attained, but not at the sacrifice of stating the elements of a claim or of a defense. They remain the same as at common law as a matter of substantive law as well as of good pleading ... The common law has been saved from the excesses of special pleading and especially its verbosity and technicalities, and nowhere more effectively than in New Jersey, but in the process the substantive law has not been changed. On the contrary, it has been preserved and our procedure has been made to serve the ends of substantial justice, not by abandoning stating the essentials of a cause of action or of a defense, but by doing so in "simple, concise and direct terms...." [2 N.J. at 150-152; emphasis supplied]
Grobart is not only sound but illustrative, first of the morass into which the former practice had sunk and also into which the present practice will reimbed itself unless checked. Cf. Horton v. A.I.M.S., 145 N.J. Super. 550, 554 (Law Div. 1976). We must never become slaves to a system of pleading, but liberality must not degenerate into anarchy.
The conclusory allegation in paragraph four of the second count of defendant's counterclaim, i.e., that plaintiff slandered defendant, is an inadequate "statement of the facts on which the claim is based" under R. 4:5-2, and accordingly paragraph four must fail for insufficiency. It is not necessary that every allegation of slander contain a verbatim transcription of the words spoken, accompanied by an exhaustive narrative of the circumstances and an accounting for the damages. However, the distinction between the state and the federal systems of pleading indicates that plaintiff plead the facts in our court. Compare Hand v. Hand, 23 N.J. Misc. 118 (1948), and Chandless v. Borg, 28 N.J. Super. 137 (Law Div. 1953), with Continental Collieries, Inc. v. Shober, 130 F.2d 631 (3 Cir.1942), and Geisler v. Petrocelli, 616 F.2d 636 (2 Cir.1980). This is peculiarly necessary in defamation actions.
*106 Actions for defamation necessarily involve alleged improper use of language, one of the most changeable and mutable of man's creations. Language, particularly English, has evolved at an ever quickening pace. With difficulty we translate Hamlet. We note with polite amusement the apparently stilted language of the last century and we alter by a kind of osmosis words whose meanings were once deemed crystal clear but may quite conceivably be rendered less than acceptable by the passage of time. Thus:
Our hearts were young and gay
may well connote an entirely different meaning than lighthearted, sprightliness, while A.E. Housman's plaintive lament for the fallen of World War I:
By brooks too broad for leaping
the lightfoot lads are laid
The rose lipped girls are sleeping
in fields where roses fade
transfers from a lament for the fallen into a far less noble scene in today's debased literary coinage.
Defamation, if actionable at all, is complete when committed. While obviously there are many things to be discovered in the normal evolution of the case, yet the basic words themselves, are available at once. Given the above factors it is not casting an onerous burden upon a plaintiff to require him to specify forthwith the defamatory words and the meaning plaintiff attaches to them. Only thus can a defendant be apprised of this charge attributed to him.
The court is not unmindful of the ability of a party to obtain a more definite statement under R. 4:6-4. Such motions are indeed proper and the practice is, in fact, sadly underutilized. However, this type of motion is not a panacea and in the instant case not even appropriate.
Moreover, it must be pointed out that discovery is the adjectival portion of a case, designed to disclose to the parties the details of each other's position. It is not  and never was *107 intended  to take the place of the "position paper" which a properly drawn complaint should be.
The paradox, of course, is the necessity on the one hand to avoid throttling justice by a blind adherence to a rigid system of procedure transformed from the means to the end while avoiding equally the degeneration of the process into a mass of useless and expensive discovery. In a lawsuit the parties should be searching for the truth, not blundering into it.
It should be superfluous to point out that discovery, while necessary, is expensive and time-consuming. To require a party seeking relief to put his cards on the table at once tends to cut down the process, save time and expense and reserves the discovery process for its real purpose, discovery of the specifics of the facts pleaded in the complaint.
As a subsidiary issue, paragraph three of the second count of the counterclaim alleges that plaintiff's action constitutes malicious use of civil process, and demands damages therefor. It is, however, well settled that before a claim for malicious use of process can be maintained, the action forming the basis of the claim must have concluded favorably to defendant; malicious use of process cannot be asserted in a counterclaim, Penwag Property Co., Inc. v. Landau, 148 N.J. Super. 493 (App. Div. 1977), aff'd 76 N.J. 595 (1978).
In Penwag, as in the present case, a landlord sued its tenant, and tenant in its counterclaim alleged that plaintiff's action constituted malicious use of process. 76 N.J. at 596-597. The Chancery Division entered judgment for the tenant as to both the landlord's action and the counterclaim. The Appellate Division reversed as to the counterclaim. The Supreme Court affirmed and stated:
In addition to special grievance the plaintiff in an action for malicious prosecution of a civil suit must show that the suit was brought without reasonable or probable cause, that it was actuated by malice, and that it terminated favorably to the plaintiff (citations omitted). Favorable termination did not exist when defendant's counterclaim was filed in this cause. Though plaintiff had not moved to strike that counterclaim, it should have been eliminated in the pretrial *108 order. It is not appropriate to institute a suit or file a counterclaim until the litigation has terminated in favor of the party who asserts the malicious prosecution cause of action. [at 598].
For this reason paragraph 3 must likewise fall as failing to state a claim upon which relief can be granted, R. 4:6-2(e).
Lastly, it may be pointed out in confirmation of the validity of the arguments set out herein that within three days after the court orally announced its decision herein, the defendant settled out!