**NEW ZEALAND KIWIFRUIT MARKETING BOARD,**
Plaintiff,

v.

**CITY OF WILMINGTON, McFoy Refrigeration Company, Perley–Halladay Associates and Devault Refrigeration Services, Inc., Defendants.**

**Civ. A. No. 91–580–JLL.**

United States District Court, D. Delaware.

Sept. 29, 1992.

Opinion on Motion for Reargument Nov. 2, 1992.

---

David E. Brand of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., and James P. Krauzlis and Edward C. Radzik of Donovan Parry Walsh & Repetto, New York City, of counsel, for plaintiff.

Jeffrey S. Goddess of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, Del., and James F. Young and Mary Elisa Reeves of Krusen Evans and Byrne, Philadelphia, Pa., of counsel, for defendant City of Wilmington.

Raymond Cobb of Goldfein & Joseph, Wilmington, Del., for defendant McFoy Refrigeration, Inc.

John D. Balaguer of White & Williams, Wilmington, Del., for defendants Perley–Halladay Associates and Devault Refrigeration Services, Inc.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendant, City of Wilmington, has brought this motion before the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking an order for summary judgment against plaintiff, the New Zealand Kiwifruit Marketing Board ("New Zealand Kiwifruit").[1] Plaintiff commenced this action seeking damages for the loss in value of a shipment of kiwifruit which was partially destroyed while in a port warehouse facility operated by defendant. (Docket Item ["D.I."] 1 at 3.) Plaintiff based its claim against the City on five separate theories of liability: breach of contract, tort, breach of bailment, fraud and conversion.[2] Since this Court will grant summary judgment to the defendant by enforcing a clause in defendant's tariff which contains a one-year statute of limitations for any suit brought against the city, the Court does not need to reach either the tort or breach of bailment claims and thus will not discuss them.

Plaintiff is a duly organized legal entity created and operating under the laws of New Zealand, with its principal place of business being Auckland, New Zealand. Defendant is a legal entity, duly organized, created and existing under the laws of the State of Delaware. The amount in controversy exceeds fifty-thousand dollars exclusive of interest and costs. The Court's jurisdiction is based on diversity of citizenship in accordance with 28 U.S.C. § 1332.

### II. FACTS

On or about July 5 or 6, 1990, plaintiff's shipment of 2,961 pallets of fresh kiwifruit arrived at the Port of Wilmington, was unloaded and placed in the Port's refriger-

---

1. Defendants McFoy Refrigeration Company, Perley–Halladay Associates, and Devault Refrigeration Services are not parties to this motion. Accordingly, the term "defendant" used in this opinion will refer to defendant, City of Wilmington, only.

2. Plaintiff has since withdrawn its allegations of fraud and conversion. (D.I. 53 at 4, note 1.)

ated storage facilities. The Port of Wilmington and the facilities in which plaintiff's cargo were stored are owned and operated by the defendant, City of Wilmington. On or about July 9, 1990, 200 pallets of the fresh kiwifruit being stored in defendant's refrigeration system were cooled to a temperature of approximately 25 degrees Fahrenheit which froze the kiwifruit and thereby destroyed it. According to the plaintiff, the Port had been instructed to maintain the fresh kiwifruit at a temperature no less than 32 degrees Fahrenheit; and the destroyed kiwifruit had a value of $266,549.48. Plaintiff brought suit in this Court on October 22, 1991, to recover the value of the destroyed cargo. Defendant City of Wilmington publishes its rates in a document entitled the General Tariff (hereinafter the "tariff") in accordance with 46 U.S.C.App. § 801 *et seq.* Defendant's tariff also includes the rules and regulations of the Port of Wilmington, including a one-year statute of limitations for any suits against the Port or the City and a clause which mandates that use of the port shall constitute consent to all the terms of the tariff. The relevant sections of the tariff read as follows:

Use of Tariff

The use of the facilities under the jurisdiction of the Port shall constitute consent to the terms and conditions of this Tariff, and evidences an agreement on the part of all vessels, their owners or agents, and other users of such facilities to pay all charges specified in this Tariff and be governed by all rules and regulations herein contained.

and:

Limitation of Liability

... Any suit against the Port or the City or their employees of any type whatsoever must be instituted within one year from the date of the alleged injury or from the receipt or delivery of the cargo.

(D.I. 38 at A–2 and A–5.)

Defendant contends that the tariff constitutes the agreement of the parties concerning the use of the Port of Wilmington and that the one-year statute of limitations contained in the tariff must thus operate as a bar to plaintiff's suit.

Plaintiff contends that the terms and conditions for storage at the Port were set out in a letter agreement negotiated between the Port and David Oppenheimer & Company, Ltd. Plaintiff further argues that it had no actual notice of the terms of the tariff and thus can not be bound by those terms. More specifically, plaintiff states that it had no actual notice of the one-year statute of limitations and thus this action should not be time-barred.

### III. DISCUSSION

■ It is settled law "that the filing of a tariff gives constructive notice only of those terms which are required by law to be filed." *La Salle Machine Tool, Inc. v. Maher Terminals, Inc.*, 611 F.2d 56, 60 (4th Cir.1979). It is also well established that limitations on liability are not among the provisions required to be filed by 46 U.S.C.App. § 801 *et seq.* or the applicable regulations 46 C.F.R. § 533.3. *Id.; Federal Commerce & Navigation, Co. v. Calumet Harbor Terminals, Inc.*, 542 F.2d 437 (7th Cir.1976). Thus, the issue of whether or not the tariff and its one-year statute of limitations controls the agreement between the parties to this litigation depends on whether or not the plaintiff had actual notice of the tariff.

Plaintiff appears to agree with that conclusion since it has raised no argument to counter the assertion that if it had actual notice of the tariff, the tariff would constitute the contract with defendant. Nor has any argument been made to counter the assertion that if the tariff constitutes the contract between the parties that the one-year statute of limitations contained in the tariff at Section II Par. 14 D, (D.I. 38 at A–6),[3] would render this action time-barred against the City of Wilmington.

---

**3.** As stated in Section II of this opinion, the kiwifruit at issue was delivered to the Port of Wilmington on or about July 5 & 6, 1990, (D.I. 1 at 3), and the damage occurred on July 9, 1990.

The complaint in this suit was filed on October 22, 1991. (D.I. 1.) The Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court".

Thus, the only question before this Court is whether defendant, City of Wilmington, has offered sufficient evidence of plaintiff's actual notice of the tariff, to entitle it to summary judgment.

### A. *The Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The Supreme Court has held that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. (Citation omitted.) If the evidence is merely colorable (citation omitted) or is not significantly probative, (citation omitted) summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511.

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, "there can be no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmov-

ing party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." (Citation omitted.)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Thus the question before this Court which will determine whether defendant is entitled to summary judgment is whether plaintiff has offered any evidence concerning the essential element of actual notice of the tariff, or whether plaintiff's failure to offer sufficient evidence on that essential element constitutes "a complete failure of proof" and thus "necessarily renders all other facts immaterial".

### B. *Sufficiency Of The Evidence*

■ As stated earlier, the only issue to be resolved in this case is whether or not plaintiff had actual notice of the terms of the tariff. If plaintiff had actual notice, its suit against the City of Wilmington is time-barred by the one-year statute of limitations contained in the tariff.

To support its claim that plaintiff had actual notice of the tariff, the defendant has offered considerable evidence in the form of affidavits of its own employees, admissions of plaintiff's employees and agents, and plaintiff's own claim documents at the time of the spoilage. Specifically, defendant has offered: First, The August 3, 1992 affidavit of John B. O'Donnell who attests:

1. He is and has been the Director of Trade Development for the Port of Wilmington since November 1985.

2. Every year he sends updated tariffs to all users of the Port, and in 1990 that included the New Zealand Kiwifruit Marketing Board.

Fed.R.Civ.P. 3. Thus this suit was commenced more than a year and three months after the

cause of action occurred.

3. In January, 1990 he sent David Oppenheimer & Co.[4] a letter which specifically referenced the tariff.

4. In May, 1990, he personally handed a copy of the tariff to both Bill Osterstrom[5] of David Oppenheimer & Co. and David Anstis of the New Zealand Fruit Company.[6]

(D.I. 54 at Exhibit G.)

Second, defendant has offered as evidence a copy of the letter referred to in John B. O'Donnell's affidavit which references the tariff as to price.

Third, defendant has offered plaintiff's own trial exhibit of an August 28, 1990 claim letter from John M. Hughes of the Marine and Cargo Surveyors to B.R. Hubbard of the Marine Insurance Company. That letter contained (1) the following statements:

> During an interview with various parties involved with this incident, we have developed the following information.... According to Mr. David Anstis of the New Zealand Fruit Company, there is no formal contract between them and the Port of Wilmington for storage of the product. Storage responsibility is covered in the General Tariff Regulations for the Port of Wilmington, Delaware. (See Attached.)[7]

and (2) an attached copy of the section of the tariff entitled Limitation on Liability which stated the one-year statute of limitations.

Fourth, the defendant offered as evidence the deposition transcript of John M. Hughes which read in pertinent part:

Q. Where did you get that portion of the tariff regulations [the portion which he attached to the letter discussed *supra*]?

A. From Bill Osterstrom.

Q. When did you get that from Bill Osterstrom?

A. I suppose somewhere—somewhere around that date, August 28, before.[8]

Q. And under what circumstances did Mr. Osterstrom give you a portion of Wilmington's tariff?

A. At the request of David Anstis, because I had said that if there's any applicable contracts or tariffs, that I wanted it for the Marine Insurance Company.

Q. And as a result of that request, you were given a copy of the Port of Wilmington's tariff regulations?

A. Right.

(D.I. 54 Exhibit C).

Fifth and finally, the defendant also offered an excerpt of the deposition testimony of Barrett Jung of David Oppenheimer & Co. in which Jung affirms that he had no direct knowledge of any agreements between Oppenheimer and the Kiwifruit Marketing Board for importing fruit through Wilmington, Delaware, prior to July 15, 1990. Jung specifically states that he had no direct knowledge because he wasn't working for the company at the time; his only knowledge came from "what's been said in my company as to what our agreement was at that time; but obviously I wasn't directly involved in that, no." (D.I. 54 at Exhibit F.)

Although defendant carries the burden of proof concerning the issue of actual notice, defendant has offered sufficient evidence to support its claim that plaintiff had *actual notice* of the tariff. The burden

---

**4.** David Oppenheimer & Co. is the importing broker for New Zealand who negotiated agreements for transitory storage of kiwifruit. (D.I. 53 at 6–7; 54 at Appendix I.) Thus as plaintiff's agent, Oppenheimer's knowledge of the existence and terms of the tariff are imputed to the plaintiff. *Higgins v. Shenango Pottery Co.,* 256 F.2d 504, 509 (3rd Cir.1958). *See also Levendos v. Stern Entertainment, Inc.,* 909 F.2d 747, 752–53 (3rd Cir.1990).

**5.** Bill Osterstrom is the Port Manager of David Oppenheimer & Co. David Oppenheimer & Co. is the importing broker for New Zealand who negotiated agreements in 1990, 1991 and 1992 for transitory storage of kiwifruit. (D.I. 53 at 6–7.)

**6.** Defendant has offered evidence that the New Zealand Fruit Company is the U.S. counterpart of the New Zealand Kiwifruit Marketing Board. (D.I. 54 at Exhibit C.) This fact appears to be uncontested by plaintiff.

**7.** A copy of the relevant provision of the tariff stating the statute of limitations was attached.

**8.** The year would be 1990.

then switches to plaintiff to offer more evidence than a mere denial in order to create a triable issue of fact.

> The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Plaintiff has offered no admissible evidence to support its assertion that it had no actual notice of the tariff, thereby failing to meet its burden of producing evidence that would support a jury verdict. Defendant is thus entitled to summary judgment.

Plaintiff's contention that its "use of the Port facilities was governed by a separate letter agreement which stated the terms for storage and contained no suit limitation provisions and made no reference to the tariff," (D.I. 53 at 6), has no admissible evidence to support it. In support of this contention plaintiff offers two letters. (D.I. 53 at Appendices 2 & 3.) The first, dated January 15, 1991, is a letter from the Director of Sales and Marketing of the Port of Wilmington to Bill Osterstrom, Port Manager of the David Oppenheimer & Co. This Court fails to see how that letter can create a triable issue of fact, since it is dated six months after the alleged damage occurred; it specifically discusses terminal rates for the shipping of kiwifruit for the year 1991; and it specifically references the tariff regarding dockage terms. Similarly, the second letter, which is addressed to Barrett Jung, Operations Manager of David Oppenheimer & Co. from John B. O'Donnell, Director of Trade Development

of the Port of Wilmington, is even less relevant since it is dated January 10, 1992; it refers to terms for the 1992 year; it specifically refers to the tariff for dockage and wharf terms; and it is addressed to Barrett Jung whose own deposition testimony, (D.I. 54 Exhibit F), states that he was not employed at David Oppenheimer & Co. in or before July 15, 1990, and that he has no personal knowledge of the arrangements made with the Port of Wilmington at any time before July 15, 1990.[9]

Plaintiff also offers an affidavit from Barrett Jung, (D.I. 53 at Appendix 1), stating that the terms of the tariff were never referenced and thus never incorporated into the "letter agreements". However, the Federal Rules of Civil Procedure prohibit that affidavit from being considered in a motion for summary judgment since Barrett Jung has already stated under oath in his deposition that he has no personal knowledge of the events in question. Rule 56(e) states that "supporting and opposing affidavits shall be made on personal knowledge...." Fed.R.Civ.P. 56(e).

Finally, plaintiff has offered no evidence at all to contradict the affidavit of John B. O'Donnell which claims that plaintiff had actual notice of the tariff prior to its use of the port facilities. As stated earlier, the decisive issue in this summary judgment motion is the question of actual notice; defendant has properly supported its motion for summary judgment by offering evidence that such notice was given and plaintiff has failed to offer any acceptable evidence to counter that assertion. "[T]he burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

"[T]he plaintiff must present affirmative evidence in order to defeat a properly sup-

---

**9.** Defendant offered, as supporting evidence for Mr. O'Donnell's affidavit which stated that his letter specifically referenced the tariff, the only applicable version of these letters, which was a letter dated January 19, 1990, (D.I. 54 at Exhibit

D), addressed to Bill Osterstrom from John B. O'Donnell. That letter referred to the terminal rates for shipping kiwifruit for the 1990 season and specifically referenced the tariff as to dockage.

ported motion for summary judgment. This is true even where the evidence is likely to be within the possession of defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. at 2514. Discovery was closed in this case on August 28, 1992, pursuant to a Rule 16 Scheduling Order dated January 2, 1992. (D.I. 14.) Furthermore, in this case, the evidence likely to contradict defendant's evidence was more likely to be in the possession of plaintiff than defendant.

> [W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at a trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could render a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Anderson v. Liberty Lobby, Inc.,* at 252, 106 S.Ct. at 2512.

In this case, plaintiff has offered no evidence to counter the evidence establishing actual notice offered by defendant supporting its motion for summary judgment.

## IV. CONCLUSION

Since defendant has offered sufficient evidence to support its motion for summary judgment in the form of "supporting affidavits, depositions, and admissions on file," to establish that plaintiff had actual notice of the terms of the tariff, and plaintiff has

offered no admissible evidence to contradict defendant, no material question of fact exists concerning the question of actual notice. Since the applicability of the tariff hinges on the issue of actual notice, defendant is entitled to summary judgment as a matter of law. Thus, this Court will grant defendant's motion for summary judgment and dismiss the action against the City of Wilmington as being time-barred by the one-year-statute of limitations stated in the General Tariff of the Port of Wilmington.

An order will be entered forthwith in accordance with this opinion.

## MEMORANDUM OPINION ON MOTION FOR REARGUMENT

### I. INTRODUCTION

Plaintiff New Zealand Kiwifruit Marketing Board has made a Motion for Reargument in which it seeks to reargue defendant City of Wilmington's Motion for Summary Judgment which was the subject of this Court's decision and order dated September 29, 1992. (Docket Item ["D.I."] 61.) Plaintiff has also requested permission, pursuant to Local Rule 7:1.1(c), to file the affidavit of David Anstis. (D.I. 62.) For the reasons stated below, this Court will deny both the motion and the request.

### II. FACTS

On October 22, 1991, plaintiff commenced an action seeking damages for the loss in value of a shipment of kiwifruit which was partially destroyed while in a port warehouse facility operated by defendant.[1] (D.I. 1 at 3.) In City of Wilmington's Answer to Complaint, filed with this Court on December 13, 1991 (D.I. 8) the defendant pled, as an affirmative defense, the one-year statute of limitations included in its tariff. On June 22, 1992, defendant filed a motion for summary judgment with this Court, based on, *inter alia,* the one-year statute of limitations contained in its

---

1. McFoy Refrigeration Company, Perley–Halladay Associates, and Devault Refrigeration Services were named as defendants in the original complaint and continue as defendants in the ongoing litigation. It was only defendant City of Wilmington, however, who was a party to the motion for summary judgment and thus it is only the defendant City of Wilmington who is involved in the motion and the request which is before the Court at this time. Accordingly, the term "defendant", when used in this opinion will refer to defendant City of Wilmington only.

tariff. On July 13, 1992, this Court signed an order in accordance with the parties' stipulation, extending plaintiff's time to answer defendant's motion for summary judgment until August 7, 1992, and setting defendant's time to file a reply brief at September 4, 1992. (D.I. 45.) Also on July 13, 1992, defendant filed with this Court a Notice of Deposition of David Anstis. (D.I. 50.) Plaintiff filed its answering brief on August 10, 1992, in which it contended *inter alia* that the one-year statute of limitations included in defendant's tariff was inapplicable because plaintiff had had no actual notice of the tariff. (D.I. 53.) Also on August 10, 1992, this Court signed an order in accordance with a stipulation by all of the parties extending the original discovery deadline of August 28, 1992 to December 28, 1992. (D.I. 52.)

On August 19, 1992, the scheduled date for the deposition of Mr. Anstis, plaintiff was unable to locate Mr. Anstis. Instead, plaintiff made Barrett Jung available to defendant in Anstis' place. Barrett Jung, however, had no personal knowledge of the matters at issue. On September 4, 1992, defendant filed its reply brief and included in the appendix an affidavit from John B. O'Donnell stating *inter alia* that he had personally handed Mr. Anstis a copy of the tariff in question in May of 1990, thereby offering evidence that plaintiff, through Anstis, had had actual notice of the tariff. (D.I. 54 at Exhibit G.)

On September 8, 1992, this Court notified the parties that oral argument on the motion was scheduled for September 17, 1992. At no time between September 4th and September 17th did plaintiff petition this Court for additional time to obtain discovery prior to the scheduled oral argument, nor did plaintiff seek the Court's permission to file additional affidavits pursuant to Local Rule 7.1.1(c).[2] Oral argument was

held on September 17, 1992, at which time plaintiff's counsel apprised the Court, for the first time, that it had located Mr. Anstis. Plaintiff's counsel then attempted to testify as to the details of a phone conversation with Mr. Anstis concerning the issue of actual notice. Plaintiff had obviously located David Anstis at some time prior to oral argument. However, as stated *supra*, at no time prior to oral argument did plaintiff approach this Court and request additional time to either prepare an affidavit from Anstis, or to make Anstis available for deposition. Furthermore, at no time prior to oral argument did plaintiff argue to this Court that the summary judgment motion was premature due to the need for further discovery.

On September 29, 1992, this Court filed a Memorandum Opinion and Order granting defendant's motion for summary judgment. (D.I. 57.) On October 9, 1992, plaintiff filed a Motion for Reargument with this Court (D.I. 61) and on October 14, 1992, plaintiff sent a letter to this Court requesting permission, pursuant to Local Rule 7.1.1(c) to submit the affidavit of David Anstis which it was on the verge of obtaining.[3]

## III. DISCUSSION

Plaintiff argues that this Court's reliance on the affidavit of John O'Donnell in granting defendant's motion for summary judgment is misplaced because "plaintiff was not afforded the opportunity prior to oral argument to conduct discovery relevant to Mr. O'Donnell's testimony on the central issue of plaintiff's actual notice of the limitation provisions in the Port of Wilmington General Tariff." (D.I. 61 at 2.) Plaintiff's argument is without merit for three reasons: (1) plaintiff had notice of the need to present evidence on the issue of

---

**2.** As is discussed later, the proper time for a 7.1.1(c) request is before a motion has been finally decided.

**3.** Even in plaintiff's October 14, 1992 letter requesting permission to submit Mr. Anstis' affidavit, plaintiff stated that it was not yet in possession of a signed copy of Mr. Anstis' affidavit. (D.I. 62.)

Plaintiff's October 14th letter states:

Pursuant to Local Rule 7.1.1(c), I respectfully request permission to file the affidavit of David Anstis dated October 13, 1992. A copy of that affidavit was telecopied to me and I expect to receive the signed original soon.

actual notice, since plaintiff, itself raised that issue; (2) plaintiff had notice of the need to depose David Anstis because defendant filed a notice of deposition of David Anstis; and (3) the time to argue inadequate time for discovery was before the motion was argued and decided, not after.

First, it was not the affidavit of John O'Donnell which should have given plaintiff notice of the need to conduct discovery on the issue of actual notice.[4] Plaintiff's contention that O'Donnell's affidavit provided its only notice of the necessity of an affidavit from Anstis is a gross mischaracterization of the facts. Plaintiff, itself, raised that issue in its August 7 answering brief. (D.I. 53.) O'Donnell's affidavit was merely a reply to plaintiff's assertion that it had had no actual notice of the tariff. Unless, when plaintiff argued lack of notice in its answering brief it expected defendant to offer no defense whatsoever, in effect to "roll over and play dead", plaintiff was apprised, by its own argument, of the need to produce some evidence to support its assertion.[5]

Second, the "discovery relevant to Mr. O'Donnell's testimony" which plaintiff claims it was not afforded adequate opportunity to conduct, was, in fact, the deposition or affidavit of David Anstis which plaintiff now seeks to submit. Defendant apprised plaintiff of the need to depose David Anstis when defendant filed its Notice of Deposition of David Anstis on July 13, 1992. (D.I. 50.) At that time, plaintiff

stated that it was unable to locate Mr. Anstis and instead produced Barrett Jung, who had no personal knowledge of the relevant issues. Now, however, plaintiff not only claims that it lacked warning of the need for discovery of Mr. Anstis, and that such a lack of warning should be a reason for allowing reargument, but plaintiff now also requests permission to file the conveniently discovered Mr. Anstis' affidavit.

This Court finds the argument that plaintiff had no notice of the need for Anstis' testimony prior to receiving O'Donnell's affidavit completely unpersuasive in light of the fact that defendant had specifically requested the opportunity to depose Anstis. To now permit the filing of the Anstis affidavit in a motion for reargument would reward a party who was lax, if not irresponsible, in its discovery efforts at the expense of an opponent who had already been disadvantaged once by that laxity.[6]

Plaintiff's behavior in being unable to locate Mr. Anstis when defendant was in need of information from him, yet locating him almost immediately when finding itself in need of his testimony, would be troublesome enough to this Court in the course of the motion for summary judgment. However, to allow such behavior to provide the basis for reconsidering a decision rendered after full briefing and oral argument is clearly unacceptable. In essence, plaintiff attempts to use its own dilatory behavior prior to argument and decision as the basis for its motion for reargument and as the

---

4. The Court is not entirely persuaded by the assertion that plaintiff used reasonable diligence in its initial search for Mr. Anstis. As discussed *infra,* when defendant requested Mr. Anstis be produced for the purpose of defendant's deposing him, plaintiff was unable to locate him. However, when defendant introduced evidence, which if unrefuted by an affidavit from David Anstis would decide the key issue in defendant's motion, plaintiff was able to locate Mr. Anstis.

5. In fact Mr. O'Donnell's affidavit responds to the absence of an affidavit from Mr. Anstis. Plaintiff failed to produce Mr. Anstis for the August 19th deposition and instead produced Barrett Jung, who had no personal knowledge of the relevant issues. Presumably, the defendant was looking to question David Anstis on the question of actual notice of the tariff. In the absence of the opportunity to gather the

information it wanted from that primary source, the person who had received notice, defendant resorted to an affidavit from a secondary source, the person who had given the notice. It was plaintiff's failure to produce a witness with knowledge of notice which triggered the need for John O'Donnell's affidavit.

6. A further example of plaintiff's continued laxity and unpreparedness was exhibited at oral argument when plaintiff's counsel attempted to testify for Mr. Anstis. Even though plaintiff had located Mr. Anstis by that time, plaintiff had not managed to obtain an affidavit from Mr. Anstis. Plaintiff's counsel would have done better to use the time prior to oral argument to prepare an affidavit and to arrange to have it signed, rather than attempting to read his version of a telephone conversation into the record at oral argument.

basis for allowing additional affidavits after the decision has been rendered. Such a 13th–hour request, if allowed, would severely undermine the interests of judicial economy, the fairness to opposing parties inherent in the notice requirements of the adversarial system, and the certainty of judicial decisions.

Finally, the time for plaintiff to argue that it needed an extension to conduct additional discovery was prior to oral argument. If plaintiff were of the opinion that it required additional discovery when it received the affidavit of John O'Donnell on September 4, 1992, it should have informed this Court of that need in the two weeks remaining before oral argument. This Court might very well have postponed oral argument in order for further discovery to be conducted, especially in light of the fact that all parties in the case had agreed to leave discovery in the case open until December 28.[7] However, no such request was made of this Court. Since plaintiff could have made a request at the proper time and did not, this Court will not now disadvantage defendant to compensate plaintiff for its own error.

Plaintiff could also have argued that the motion for summary judgment was premature given the recent stipulation extending discovery in the case and that plaintiff was of the opinion that it needed additional time to collect more relevant information.

Plaintiff never made such an argument. Inadequate time for discovery might have been a valid defense against defendant's motion for summary judgment.[8] It is not a valid reason for granting a motion for reargument, since no plausible explanation has been offered as to why the argument was not made in the original motion.

This Court sees no reason to upset a final decision merely because plaintiff failed to put forth a potentially valid defense at the appropriate time during the course of the motion. If such procedures were permitted there would be no such thing as a final decision.

## IV. CONCLUSION

For the reasons stated above, an order will be entered forthwith denying plaintiff's motion for reargument and plaintiff's request for permission to submit the affidavit of David Anstis pursuant to Local Rule 7.1.1(c).[9]

---

**7.** Plaintiff correctly states in its Motion for Reargument that this Court's Memorandum Opinion erred in its referral to the date discovery was closed. While the date was wrong, the proposition that adequate time for discovery had elapsed was still correct, since no party had claimed otherwise.

**8.** Plaintiff's Answering Brief in Opposition to City of Wilmington's Motion for Summary Judgment advanced three arguments: (1) that the Tariff did not apply; (2) that the one-year statute of limitations did not apply because plaintiff had no actual notice of the statute of limitation provision in the tariff; and (3) an argument addressed to the issue of the County and Municipal Tort Claims Act, which was not addressed by this Court. (D.I. 53.) At no point did plaintiff's brief raise the issue that a motion for summary judgment was premature because discovery was still open and relevant information had not yet been obtained. To attempt now to argue that the motion was premature is merely an attempt to argue an issue which plaintiff

failed to raise before the motion was argued and decided.

**9.** Since this Court will deny plaintiff's motion for reargument, there is no motion pending for which plaintiff's request to submit the affidavit of David Anstis, pursuant to Local Rule 7.1.1(c) is relevant.

Local Rule 7.1.1(c) states:
(c) *Citation of Subsequent Authorities.* No additional briefs, affidavits, or other papers in support of or in opposition to the motion shall be filed without prior approval of the Court, except that a party may call to the Court's attention and briefly discuss pertinent cases decided after a party's final brief is filed or after oral argument.

Local Rule 7.1.1(c) reference to "affidavits .... in support of or in opposition to the motion" indicates that Rule 7.1.1 is only applicable during the time a motion is pending.