Elizabeth **LEVENDOS**, Appellant,

v.

**STERN ENTERTAINMENT, INC., and Stern Entertainment System, Inc., Appellees.**

Elizabeth **LEVENDOS**, Appellee,

v.

**STERN ENTERTAINMENT, INC., and Stern Entertainment System, Inc., Appellants.**

Nos. 89–3727, 89–3791.

United States Court of Appeals, Third Circuit.

Argued and Submitted Under Third Circuit Rule 12(6) May 21, 1990.

Decided July 25, 1990.

Kenneth G. Gormley (argued), Mansmann Cindrich & Titus, Pittsburgh, Pa., for appellant Elizabeth Levendos.

Ronald L. Hicks, Jr. (argued), Meyer, Unkovic & Scott, Pittsburgh, Pa., for appellee Stern Entertainment Systems, Inc.

Before SLOVITER, NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In the primary appeal at No. 89–3727 we must determine whether the district court erred as a matter of law in injecting a notice requirement into the doctrine of constructive discharge under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e–2000h–6 (1982). Subsumed in this problem are two somewhat related but distinct subordinate inquires: whether the existence of notice *vel non* is a question of fact, and if so, was the court clearly erroneous in finding no notice (a) on the basis of imputed notice to the employer based on actions of and notice to supervisory employees or agents of the employer, or (b) on the basis of inferred notice to the employer given the small size of the business enterprise and repeated unsuccessful efforts by the employee to reach the employer to complain about acts of gender discrimination.

The appeal at No. 89–3791 concerns attorney's fees relating to the primary case.

Jurisdiction was proper in the trial court based on 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1331. Because there was an issue as to whether this was a final judgment under 28 U.S.C. § 1291, we permitted counsel for both appellant and appellee to file a joint request for certification under Rule 54(b) Fed.R.Civ.P. The district court so certified the judgment, thereby removing any problem of jurisdiction. The appeal was timely filed under Rule 4(a) F.R.A.P.

A district court's findings of fact may be set aside on appeal only if they are clearly erroneous. *Amadeo v. Zant*, 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). The standard of review with respect to alleged error in applying law to facts, however, is plenary. *See United States v. Adams*, 759 F.2d 1099, 1106 (3d Cir.), *cert. denied*, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985); *Gaines v. Amalgamated Ins. Fund*, 753 F.2d 288, 290 (3d Cir.1985).

## I.

We are familiar with the concept of constructive discharge in Title VII cases, having described it as "acts of discrimination in violation of Title VII [that] make working conditions so intolerable that a reasonable employee would be forced to resign." *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887 (3d Cir.1984). Nor are we strangers to this case, having previously considered an appeal from this appellant, Elizabeth Levendos, in *Levendos v. Stern Entertainment Inc.*, 860 F.2d 1227 (3d Cir. 1988) (hereinafter *Levendos I*). The facts are not complicated.

Appellees Stern Entertainment, Inc., and Stern Entertainment System, Inc. operated the Les Nuages Restaurant and the Heaven Night Club, both located in the Fulton Building, Pittsburgh, Pennsylvania. They employed Levendos in their restaurant. She began as a waitress in 1979 and was subsequently promoted to maitre d' and pastry chef during 1981 and 1982. Levendos contends that she was constructively discharged on April 22, 1982, when she submitted her resignation. Her salary as maitre d' and throughout her employment was $300.00 per week; as pastry chef she received additional compensation equal to one-third of the pastry receipts.

On December 21, 1984, after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), she filed a complaint in the district court alleging a violation of Title VII of the Civil Rights Act of 1964. She alleged that the appellees constructively discharged her from her employment as maitre d' and pastry chef at their restaurant based on her gender, and that their supervisory employees made working conditions so intolerable that a reasonable person in her situation would resign.

On January 22, 1987, the district court consolidated the claim of Elizabeth Levendos with that of her daughter, Katerina Levendos, who had alleged that she was terminated from the same establishment as a waitress based upon her gender. On September 9, 1987, the court entered summary judgment against appellant Elizabeth Levendos, but allowed Katerina's case to proceed to trial. As to Elizabeth, the court held that even if the facts Levendos alleged were true, they did not establish, as a matter of law, that she was constructively discharged from her position.

Elizabeth successfully appealed. We held that the allegations of Levendos "contain[ed] both the quality and quantity of evidence sufficient to allow the question of constructive discharge to go to a jury." 860 F.2d at 1232. Determining that the events of alleged discrimination described by her were "clearly not trivial" we remanded the case for further proceedings.

By this time, the district court had already conducted its trial with respect to the daughter, Katerina. In light of our decision that vacated and remanded the case of Elizabeth, the lower court re-consolidated the two cases for the purpose of receiving further evidence. During the second set of hearings held April 19–24, 1989, the district court concluded that the evidence and testimony received in each trial were applicable to both cases.

## II.

During the course of trial, appellant Elizabeth Levendos introduced testimony that her treatment by management began to deteriorate by the end of 1981. She specifically introduced testimony to demonstrate the following events:

1. She began experiencing difficulty in ordering supplies, which adversely affected her ability to run the restaurant

as maitre d'. Brief for Appellant at 6–7; A–62–64.

2. She was excluded from management meetings, although previous maitre d's and other managers had been included. *Id.*

3. Chef David DeVos accused her of stealing and drinking on the job and stated that these accusations had been suggested by the president of the defendant-corporations, Richard Stern. *Id.*

4. Chef DeVos told her that Stern intended to replace her with a male maitre d'. *Id.*

5. She made at least ten attempts over a period of months to communicate with Richard Stern concerning the sexually discriminatory conduct. App. at 232–33; 415–416. The day before she resigned she attempted to reach Stern by telephone numerous times. App. at 232; 416–418.

6. She discovered wine bottles wrapped in an apron, hidden in her locker, placed there to appear as if she were stealing. Brief for Appellant at 6–7; A–62–64.

According to an affidavit filed by Levendos, she "was the only female in a management position." She further stated that Herman Hartman, the general manager of both the night club and the restaurant, "boasted that [Levendos] would not be there long," that "management ... told other employees that [she] did not fit the 'mold' for maitre d' because [she] was a woman," that Chef David DeVos "was asked ... by [the owner] to find a male to replace [her]," that "management ... falsely accus[ed her] of stealing, drinking and fraternizing with employees." E. Levendos Affidavit at 2–3; Record at 24.

An affidavit filed by Robert Roth, one of Levendos' co-workers, stated that Levendos "had an excellent reputation at the restaurant [and that c]ustomers frequently came in and asked for her specifically," and that "she was written up in the Pittsburgh Press for her excellent work." Roth Affidavit at 2–3; Record at 23. He stated also that he believed the owner "liked the image of a male staff," that the chef "acknowledged that [there] was a plan to get rid of

her, and replace her with a male friend of [the chef]," and that the owner refused to meet with her. Roth Affidavit at 3; Record at 23.

Both affidavits included the affiants' view that the Stern management disliked women in general and viewed them as inferior. Moreover, in the complaint filed by Levendos with the EEOC, she alleged that she was not allowed to order supplies even though a male manager was permitted to order them. Additionally, she was replaced by a male.

On October 4, 1989, the district court issued an opinion and judgment in the consolidated cases. 723 F.Supp. 1104. The court found in Katerina's favor, holding that defendants or their agents had intentionally discriminated against her based upon her sex, and terminated her from her position as waitress in violation of Title VII.

The district court credited the testimony of Elizabeth Levendos: "The Court as trier of fact accepts the veracity and credibility of the testimony in support of the allegations of plaintiff Elizabeth Levendos." App. at 32, district court opinion at 1107. The court held, however, that she had failed to make out a case of constructive discharge because she had submitted her resignation without first giving notice to Richard Stern, the president of Stern Entertainment, and therefore failed to "exhaust recourse to correction through channels or chain of command." A–64; district court opinion at 1108. The court also reasoned that the appellant had not been subject to "intolerable working conditions that would force a reasonable person to quit," *id.*, and that "while annoying to the employee responsible for effective operation of the restaurant," *id.*, the actions of the management were a matter of "managerial discretion." *Id.* The court found that these conditions, standing alone, did not amount to constructive discharge.

As to the more serious allegations concerning the accusations of stealing and drinking on the job, and the planting of wine bottles in the appellant's locker to give credence to the allegations, the court

held that these were "serious grievances which would constitute constructive discharge *if approved by executive management." Id.* (emphasis added). Finding no approval by or notice to President Richard Stern, the court refused to sustain Elizabeth Levendos' claim of constructive discharge.

### III.

 Appellant Elizabeth Levendos contends that the court erred by injecting a "notice requirement" as a matter of law into the constructive discharge doctrine and ignoring the acts of agents of the appellee corporations which created the intolerable conditions. We agree. We hold that although notice to executive management is a factor to be considered in a claim of constructive discharge, a requirement of notice is not a *sine qua non.* To absolutely require a notice in such cases would be to fly in the face of recent pronouncements of the Supreme Court in similar Title VII cases.

In *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Court considered a similar issue in the context of a sexual harassment and hostile environment case under Title VII. There, the plaintiff alleged that a vice-president of the employer-bank had repeatedly made demands for sexual favors from her, over a period of years. She testified that because she feared the vice-president, and feared for her job, she never reported his harassment to any of her supervisors and never attempted to use the bank's complaint procedure. *Id.* at 60–61, 106 S.Ct. at 2402–03.

The Court rejected the district court's determination that a notice requirement should be injected into Title VII emphasizing that "we do agree with the EEOC that Congress wanted courts to look to agency principles for guidance in this area." *Id.* at 72, 106 S.Ct. at 2408 (citing Restatement (Second) of Agency §§ 219–237 (1958)). The Court concluded that the "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* Moreover, the Court rejected the bank's

contention that "the mere existence of a grievance procedure and a policy against discrimination, coupled with respondent's failure to invoke that procedure," should insulate the bank from liability for the discriminatory acts of its agents. *Id.* The four concurring justices also emphasized the role of agency precepts in Title VII litigation:

> An employer can act only through individual supervisors and employees; discrimination is rarely carried out pursuant to a formal vote of a corporation's board of directors. Although an employer may sometimes adopt companywide, discriminatory policies violative of Title VII, acts that may constitute Title VII violations are generally effected through the actions of individuals, and often an individual may take such a step even in defiance of company policy. Nonetheless, Title VII remedies, such as reinstatement and backpay, generally run against the employer as an entity. The question thus arises as to the circumstances under which an employer will be held liable under Title VII for the acts of its employees.
>
> The answer supplied by general Title VII law, like that supplied by federal labor law, is that the act of a supervisory employee or agent is imputed to the employer.

*Id.* at 75, 106 S.Ct. at 2409 (Marshall, J., concurring) (citations omitted). We first turn to the question of whether there was action of and notice to individual supervisory employees and agents of Stern Entertainment that may be imputed to the employer through precepts of agency law.

### IV.

 We have concluded that both Herman Hartman, General Manager, and David DeVos, Chef, were supervisory employees and agents of Stern Entertainment. Herman Hartman directed the entire operation. Although he had primary responsibility for the night club, his power extended over the restaurant, a power that included hiring and firing. A–58; district court opinion at 1105. Serving under Hartman

were three managers: Chef David DeVos (in charge of the kitchen); Maitre d' Elizabeth Levendos (in charge of the restaurant); and Robert Schilling (assistant manager for liquor). A–352–354; district court opinion at 1105.

As General Manager, Hartman had the power to hire or fire anyone within the establishment, provided he informed Mr. Stern. A–363. The chef and maitre d' were coordinate positions, both responsible to Hartman and Stern. A–352–354. Nonetheless, the chef was considered more critical than the maitre d' in operating the restaurant. A–351–352. Mr. Stern admitted that he considered it wise to involve the chef in the selection of maitre d' because the maitre d' had to work closely with the chef to keep the whole operation running smoothly. A–376–377. Given this hierarchy, it is clear that both Hartman (as General Manager) and DeVos (as Chef) had the direct ability to influence hiring and firing decisions with respect to the maitre d', particularly Elizabeth Levendos. A–405.

Levendos testified that Hartman and De-Vos had participated in, contributed to, or created the intolerable conditions that led to the separation of her employment. Hartman began using her supplies, ordered for use in the restaurant, in the night club, without recording such use. He took water glasses, champagne glasses and cognac snifters, giving credence to the allegations of Levendos' stealing on the job. A–199–205; A–225–226. He also verbally abused her and threatened that she would not be around "much longer." See Appellant's Brief at 25–28; A–408–415. Chef DeVos, who as Chef was supervisor of the kitchen, told her that Stern "wanted to get rid of her" because of "stealing, drinking on the job, fraternizing with other employees, and being too expensive to keep on the payroll." A–154–160; 167–170; A–84–87; A–213. He also testified at trial that Stern had instructed him to find a man to take over the job as maitre d'. A–170; A–84–87.

In addition, the district court clearly accepted that Hartman was an agent of Stern Entertainment, admitting statements of Hartman as admissions of a party opponent. See A–203. Chef DeVos, as well, may be considered to have been a supervisory employee or agent. As chef, he was supervisor of the kitchen and had been instructed by the president of the corporation to find someone to replace Levendos. Such power over hiring puts one in the position of supervisory employee or agent.

Several courts have articulated the test to determine whether someone is an agent to be as follows:

A person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination.

*Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986) (citing *Jones v. Metropolitan Denver Sewage Disposal District*, 537 F.Supp. 966, 970 (D. Colo.1982)); *Thompson v. Intern. Ass'n of Machinists*, 580 F.Supp. 662, 669 (D.D.C.1984). *See also Zaklama v. Mt. Sinai Medical Center*, 842 F.2d 291, 295 (11th Cir.1988) (defendant was an agent because it was in a position to affect plaintiff's employment and did affect his employment with its adverse evaluations). According to the testimony presented, and accepted as true by the district court, both Hartman and DeVos "participated in the decision-making process that forms the basis of the discrimination." Thus, it seems clear that the actions of and notice to both Hartman and DeVos, as supervisory employees and agents, may be imputed to Stern Entertainment. *See Meritor*, 477 U.S. at 72, 106 S.Ct. at 2408 (citing Restatement (Second) of Agency §§ 219–237 (1958)); *Id.* at 75, 106 S.Ct. at 2409.

V.

■ Alternatively, under the circumstances of this case we believe that lack of formal notice may have more relevance to the issue of constructive discharge in a large corporate enterprise with numerous employees or many branches than in a relatively small, intimate business operation. The district court found that "Richard Stern was owner and president of the corporation and actively engaged in the busi-

ness." App. at 28; district court opinion at 1105. "[Stern] said that he was a "hands-on" manager in his business" App. at 32; district court opinion at 1107. Moreover, it seems clear that there was no established grievance procedure at Levendos' workplace.

From this we can reasonably logically infer certain factual conclusions, recognizing that "[t]he key to a logical inference is the reasonable probability that the conclusion flows from the evidentiary datum because of past experience in human affairs." R. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* 29 (Clark Boardman 1989). Considering the intimacy of this business, the lack of a formal grievance procedure and the admission by Stern that he was a "hands-on manager," App. at 32, it would defy credulity to suggest that he personally did not have knowledge that Levendos was being victimized by the activities of his close associates, Hartman and DeVos.

Thus, in addition to imputing knowledge to Stern as a matter of agency law through the corporations' supervisory employees and agents, as discussed in Part IV, we can reach a factual conclusion that he had personal knowledge of gender discrimination. This will be *inferred* notice as a matter of fact, rather than *imputed* notice as a matter of law. In any event, uncontroverted evidence in the record is ample to support Levendos' assertions that she repeatedly attempted to inform Mr. Stern of the sexually discriminatory conduct she faced. It bears repetition that the district court credited her testimony. App. at 32, district court opinion at 1107. Inasmuch as no established grievance procedure was available at her workplace, her only practical means of notifying Stern of her complaints was to attempt to communicate directly with him. We have noted that she made at least ten such attempts over a period of months and that on the day before she resigned she attempted to contact Stern by telephone numerous times. Under these circumstances we are persuaded that Stern's failure to give Levendos the opportunity to discuss her complaints with him relieved her of the obligation, if any, to give further notice. Given the intimacy of this particular business operation and Levendos' repeated efforts to report acts of gender discrimination, we are persuaded that additional formal notification to Stern was not mandated.

## VI.

 Whether considered from the standpoint of either imputed or inferred knowledge, we do not accept the rigid notice requirement suggested by the district court in this case. In *Levendos I*, we reiterated the standard in constructive discharge cases to be the "reasonable employee" standard. This standard focuses on the impact of an employer's actions, whether deliberate or not, upon a "reasonable employee." 860 F.2d at 1230; *see also Goss v. Exxon Office Systems, Co., supra*, 747 F.2d at 887 ("The court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.")

## VII.

In holding that formal notice is not always required to sustain a case of constructive discharge under Title VII, we do not disregard the relevance of notice. Notice is a factor and may be relevant in proving a case of constructive discharge under Title VII. We recognize that the quality and formality of notice, however, depends upon the size and circumstances of the business enterprise. Applying these precepts in this case, we construe the district court's determination of lack of notice to be a finding of fact, which we must then measure against the clearly erroneous standard. So measured, such a finding does not survive our review because there is insufficient, if any, support for it in the record.

Once the district court established and accepted the credibility and veracity of Levendos, it was not free to disregard testimony concerning her complaints. This testimony clearly established that she was excluded from management meetings; was

denied authority to order supplies; was falsely accused of stealing and drinking on the job; was told by Chef DeVos that Stern intended to replace her with a male maitre d'; and found bottles of wine stuffed in her locker. A–62–64; district court opinion at 1107–08. The court, moreover, held that Levendos' complaints that she had been accused of stealing and drinking on the job and the planting of wine bottles in her locker to give credence to the allegations were "serious grievances which would constitute constructive discharge ..." A–64; district court opinion at 8. Additionally, the uncontroverted testimony established that appellant Levendos attempted numerous times to reach Stern by telephone to tell him of her situation. The totality of this uncontroverted testimony is sufficient to establish a case of discrimination and constructive discharge.

Based upon this evidence, we conclude the court's finding of lack of notice to be clearly erroneous. The facts found below support a finding of imputed notice based upon the actions of Herman Hartman, as General Manager and David DeVos, as Chef, as agents and supervisory employees of appellee corporations. Alternatively, we can infer actual notice to Stern because of (a) the reasonable probability that he knew of the circumstances because he was an admitted "hands-on manager" in a relatively small operation, and (b) the repeated attempts of Levendos to reach Stern to report the acts of discrimination.

### VIII.

This, too, must be said. The district court itself admitted that it was not free from doubt in its approach to this matter, stating that the case "involved doubtful and arguable issues and was once remanded by the Court of Appeals for trial, and for aught we know may be again remanded for retrial...." App. at 57.

Because we will reverse the judgment of the district court, the defendant may not be considered the prevailing party. We therefore affirm the denial of attorneys' fees.

### IX.

The judgment of the district court in 89–3727 will be reversed and the proceedings remanded for a determination of damages in favor of Elizabeth Levendos. The order at No. 89–3791 denying attorneys' fees will be affirmed.