Carolyn S. CRAWFORD, M.D., Plaintiff,

v.

WEST JERSEY HEALTH SYSTEMS (VOORHEES DIVISION), James Shedno, Newborn Pediatric Associates, West Jersey Physician Associates, P.A., Michael Stone, Stephen Colemeco, M.D., Michael Musci, D.O., Carol Delfaus, M.D., David Wurtzel, M.D., Gloria Durelli, M.D., John Does, 1–5, fictitious names, Defendants.

Civ. No. 92–4572.

United States District Court,
D. New Jersey.

March 31, 1994.

Carl Poplar, Terry Lodge, Poplar & Eastlack, Turnersville, NJ, for plaintiff.

David Parker, Lisa M. Kmiec, Parker McCay & Criscuolo, Three Greentree Corp., Marlton, NJ, for defendants.

## OPINION

BROTMAN, District Judge:

Presently before the court is defendants' motion to stay the present action pending arbitration and for partial dismissal of the complaint, as well as plaintiff's cross-motion to amend her complaint. For the reasons set forth below, defendants' motion to stay the present action pending arbitration is granted, and their motion to dismiss the complaint is granted in part, and denied in part. In addition, plaintiff's motion to amend her complaint is granted in part, and denied in part.

## I. *FACTUAL BACKGROUND*

In mid–1987, the plaintiff, Carolyn S. Crawford, M.D., was hired by West Jersey Physician Associates, P.A. ("West Jersey Physician") as Medical Director of the Neonatal Intensive Care Unit. Crawford and West Jersey Physician executed an Employment Agreement (the "Agreement"). The Agreement became effective from August 2,

1990 and continued for an *additional* year past February 1, 1991. The Agreement, by Addendum, contained an arbitration provision, which provided as follows:

> 12. *Arbitration*—In the event that any dispute shall arise with regard to the interpretation or performance of any part of this Agreement, all matters in controversy shall be submitted to the American Arbitration Association located in Somerset, New Jersey, in order to give full effect to the intentions of the parties. The parties hereto shall be bound by the decision of the American Arbitration Association and shall accept any decisions by a majority of the Arbitrators as a final and binding determination of the matter in dispute. Judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction thereof.

In August 1991, plaintiff was fired by West Jersey Physician. On October 30, 1992, plaintiff filed suit in this court, and on January 26, 1993 she filed a First Amended Complaint, alleging sex and age discrimination, violation of 42 U.S.C. § 1983, retaliatory discharge, tortious interference with contract, defamation, and negligent and intentional infliction of emotional distress.

Defendants moved to stay the action pending arbitration and to dismiss certain of plaintiff's claims. Plaintiff cross-moved to amend her complaint, and submitted a Proposed Second Amended Complaint ("Proposed Complaint") to the court. Defendants oppose the cross-motion to amend.

## II. DISCUSSION

### A. Motion to Dismiss and Cross–Motion to Amend the Complaint

Defendants originally moved to dismiss the First Amended Complaint. Rather than responding to defendants' motion to dismiss, plaintiff moved for leave to amend the complaint, and submitted a Proposed Complaint to the court. As defendants point out, the Proposed Complaint remedies many, but not all, of the defects indicated by defendants.[1]

■ Amendments to pleadings are governed by Fed.R.Civ.P. 15(a), which provides that leave to amend "shall be freely given when justice so requires." Despite this liberal standard, leave may be denied where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "Futility," according to the Third Circuit, is "where the amendment would not withstand a motion to dismiss" under Fed.R.Civ.P. 12(b)(6). *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.), *cert. denied*, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). As the discussion *infra* indicates, portions of the Proposed Complaint fail this test.

■ Before embarking on its analysis, the court must set forth the applicable standard for a motion to dismiss for failure to state a claim. In considering a motion to dismiss, a court must view all allegations in the light most favorable to the plaintiff. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint should only be dismissed where plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Id.*

### 1. Counts One through Five—Wrongful Termination

In Counts One through Five, plaintiff alleges wrongful termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, Title VII

---

1. Plaintiff incorporated the following changes to the First Amended Complaint in her Proposed Complaint: (1) withdrew the claims set forth in Count One alleging violations of 42 U.S.C. § 1983; (2) added claims to Counts One and Two for violating the plaintiff's rights under the New Jersey Law against Discrimination, N.J.S.A. 10:5–1 *et seq.*; (3) amended Count Six to "more specifically plead a claim for retaliatory discharge;" (4) withdrew the claim of tortious interference with contract in Count Seven as to Stephen Colemeco, M.D., Michael Stone, and West Jersey Physician; (5) amended Count Eight "to more specifically plead an action for continuing defamation and business defamation;" and (6) withdrew the claim in Count Nine for negligent infliction of emotion distress as to West Jersey Physicians, Michael Stone, Stephen Colemeco, M.D., Stephen Musci, D.O., Carol Delfaus, M.D., David Wurtzel, M.D., Gloria Durelli, M.D., and Stephanie Chiupeck, M.D. *See* Plaintiff's Notice of Motion filed August 5, 1993 (detailing changes incorporated in the Proposed Complaint).

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and also under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 in Counts One and Two.[2]

Defendants argue correctly that "[b]y plaintiff's own pleadings, she was employed by West Jersey Physician Associates only."[3] Def.Reply Br. at 8. Without citing to authority, defendants contend that plaintiff may only pursue these claims against her employer, West Jersey Physician.

■ Under both Title VII and the ADEA, only employers and their agents can be held liable for discrimination. § 2000e(b) of Title VII; § 630(b) of the ADEA. The test for determining agency under either statute is the same: whether the alleged agent has "participated in the decision-making process that forms the basis of the discrimination." *Hamilton v. Rodgers*, 791 F.2d 439, 443 (5th Cir.1986) (citing *Jones v. Metropolitan Denver Sewage Disposal District*, 537 F.Supp. 966, 970 (D.Colo.1982)); *quoted with approval in Levendos v. Stern Entertainment, Inc.*, 909 F.2d 747, 757 (3d Cir.1990).

■ In Counts One through Three, in addition to West Jersey Physician, plaintiff names West Jersey Health Systems (Voorhees Division) ("West Jersey Health"), and Newborn Pediatric Associates ("Newborn Pediatric") as defendants. More than one corporate entity can act as an employer. *Odriozola v. Superior Cosmetic Distribs., Inc.*, 531 F.Supp. 1070, 1075–76 (D.P.R.1982). However, plaintiff neither alleges that these related entities were her employers, nor that they acted as agents by "ma[king] the final

decisions regarding employment matters." *Id.* Accordingly, Counts One through Three will be dismissed as to West Jersey Health and Newborn Pediatrics.[4]

Similarly, defendants argue that Counts Four and Five must be dismissed. In Count Four, plaintiff alleges that she was unlawfully terminated from her employment with West Jersey Physician but only directs the Count against Michael Musci as an individual. First Amended Complaint, ¶¶ 38–39, Proposed Complaint, ¶¶ 38–39. In Count Five, plaintiff again alleges unlawful termination but lists many defendants by whom she was not employed. First Amended Complaint, ¶ 43, Proposed Complaint, ¶ 43. Except for Michael Musci, D.O., plaintiff does not allege that defendants acted as agents of West Jersey Physician.[5]

■ Defendants do not dispute that in Count Five plaintiff has stated a claim against Michael Musci, D.O., in his official capacity. First Amended Complaint, ¶ 41, Proposed Complaint, ¶ 41. However, the court must consider whether plaintiff can pursue her claim in Count Four against Musci as an individual.

District courts are split over whether the liability of an employer's agent under ADEA and Title VII is limited to his official capacity, or extends to him as an individual. *Compare, e.g., Lowry v. Clark*, 843 F.Supp. 228, 230–31 (E.D.N.Y.1994) (rejecting individual liability under Title VII); *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587–88 (9th Cir.1993), *cert. denied sub nom., Miller v. LaRosa*, —— U.S. ——, 114 S.Ct. 1049, 127

2. In her Proposed Complaint, plaintiff amended Counts One and Two to add an NJLAD claim and to dismiss her Section 1983 claim. Defendants do not challenge this portion of the Proposed Complaint. Accordingly, leave to amend Counts One and Two to include an NJLAD claim and to delete the Section 1983 claim is granted.

3. Plaintiff's complaint is littered with references to "her employment with West Jersey Physician Associates." *See, e.g.*, First Amended Complaint, ¶¶ 16, 39, 43, 47, 51. Although at one point plaintiff alleges that she was employed by all three entities, *see id.*, at ¶ 21, the fact that plaintiff's employment agreement was only with West Jersey Physician supports defendants' contention.

4. As indicated in note 2, *supra*, Counts One and Two include an NJLAD claim. NJLAD closely parallels Title VII and the ADEA. *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1101 (D.N.J. 1988). Accordingly, the court's analysis is equally applicable to plaintiff's NJLAD claim.

5. It can be inferred from the Complaint that the other defendants are non-supervisory employees. If so, a claim of unlawful termination cannot be stated against them. *See Guyette v. Stauffer Chemical Co.*, 518 F.Supp. 521, 526 (D.N.J.1981) ("[I]t would stretch the meaning of the term 'employer' too far to bring [a non-supervisory] employer within [the] coverage" of Title VII.).

L.Ed.2d 372 (1994) (liability cannot lie against individuals under either Title VII or the ADEA); *Low v. Hasbro, Inc.*, 817 F.Supp. 249, 250 (D.R.I.1993) (finding that "Congress intended only to make an employer liable for the acts of his agents" under the ADEA) *with Bridges v. Eastman Kodak Co.*, 800 F.Supp. 1172, 1179–80 (S.D.N.Y.1992) (both individual and official liability may be imposed under Title VII); *Vakharia v. Swedish Covenant Hosp.*, 824 F.Supp. 769, 784 (N.D.Ill.1993) (individuals may be held personally liable under both Title VII and the ADEA); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127, 135 (N.D.N.Y.1990) (corporate officers and directors may be held individually liable for violating the ADEA if they exercised control over an employee); *House v. Cannon Mills Co.*, 713 F.Supp. 159 (M.D.N.C.1988) (refusing to extend Title VII personal liability exclusion to ADEA). The distinction is important; under the former the liability of an agent is imputed to his employer on a theory of respondent superior, while under the latter the agent must pay damages out of his own pocket.

Significantly, circuit courts have thus far refused to extend liability to the individual. *See Miller v. Maxwell's Intern. Inc.*, 991 F.2d at 587–88; *Harvey v. Blake*, 913 F.2d 226, 227–28 (5th Cir.1990). In *Harvey*, the Fifth Circuit disavowed a prior circuit court ruling imposing personal liability. The Fifth Circuit had previously ruled in *Hamilton* that prohibiting personal liability "would encourage supervisory personnel to believe that they may violate [antidiscrimination statutes] with impunity." *Hamilton v. Rodgers*, 791 F.2d at 442–43, *abrogated by Harvey v. Blake*, 913 F.2d at 227–28. The *Harvey* court agreed with *Hamilton* to the extent that "immediate supervisors are Employers [sic] when delegated the employer's traditional rights, such as hiring and firing." *Harvey*, 913 F.2d at 227. However, the *Harvey* court expressly limited the liability of the defendant to her official capacity. *Id.* at 228. In doing so, the court "note[d] that there is one case from this circuit, in which we failed to make the distinction between a supervi-

sor's official and unofficial capacity," and characterized *Hamilton* as "non-authoritative." *Id.* at 228 n. 2.

In refusing to allow personal liability, the Ninth Circuit in *Miller* also criticized the rationale of *Hamilton*: "[n]o employer will allow supervisory or other personnel to violate Title VII [or the ADEA] when the employer is liable for the ... violation. An employer that has incurred civil damages because one of its employees believes he can violate [either statute] with impunity will quickly correct that employee's erroneous belief." [6] *Id.*

The court opined that Congress intended the agency "provision ... to incorporate respondeat superior liability into the statute." *Id.* at 587. Pointing to Congress' exclusion of employers with less than 15 employees under Title VII, and less than 20 employees under ADEA, the court noted the illogicality of "protect[ing] small entities with limited resources from liability," yet "allow[ing] civil liability to run against individual employees." *Id.*

This court agrees with the reasoning of the Fifth and Ninth Circuits. Holding individual employees, but not small employers, liable under these statutes is patently inconsistent. Moreover, the court is not persuaded that personal liability increases the likelihood of deterrence. Therefore, the court holds that under Title VII and the ADEA, Musci cannot be individually liable. Accordingly, Count Four will be dismissed for failure to state a claim. In addition, Count Five will be dismissed as to all defendants, except against Michael Musci in his official capacity, for failure to state a claim.

### 2. *Count Six—Retaliatory Discharge*

■ In Count Six, plaintiff pursues a claim of retaliatory discharge. To prevail, plaintiff must establish that the discharge is "contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505 (1980). Sources of public policy include legislation, administra-

---

**6.** The *Miller* court found support for this conclusion in the "Fifth Circuit's apparent agreement with us that the *Hamilton* holding is suspect." *Id.* (citing *Harvey,* 913 F.2d at 228 n. 2). *See supra.*

tive rules, regulations or decisions, judicial decisions, and professional codes of conduct. *Id.*

 "[T]he mere voicing of opposition to corporate policy within a corporation provides an insufficient foundation for assertion of a *Pierce* claim." *House v. Carter–Wallace, Inc.*, 232 N.J.Super. 42, 49, 556 A.2d 353 (App.Div.1989), *cert. denied*, 117 N.J. 154, 564 A.2d 874 (1989). An employee must bring the alleged violation of public policy to the attention of the appropriate outside authority. *Id.* "[A] mere difference of professional opinion between an employee and those with decision making power in a corporation" does not establish wrongful discharge. *Id.*

 Crawford alleges that she was fired in retaliation for (1) changing procedures "which increased the quality of care to NICU patients, but were unpopular with staff members and private pediatricians;" First Amended Complaint, ¶ 45, Proposed Complaint, ¶ 45, and (2) preventing various defendant doctors "from treating certain patients due to their failure to follow the generally accepted standard of care and their failure to prescribe prescriptions in accordance with the medically and legally accepted manners [sic]." Proposed Complaint, ¶ 46.

In both her First Amended and Proposed Complaints, Crawford alleged nothing more than a difference of opinion between herself and her professional colleagues. Moreover, she never attempted to inform an outside authority of defendants' alleged violations of public policy. Accordingly, Count Six of the First Amended Complaint is dismissed for failure to state a claim, and leave to amend Count Six is denied.

### 3. *Count Seven—Tortious Interference*

In her Proposed Complaint, plaintiff amended Count Seven to withdraw the claim of tortious interference as to Stephen Colemeco, M.D., Michael Stone, and West Jersey Physician. Defendants do not challenge this amendment. Accordingly, leave to amend Count Seven is granted.

### 4. *Count Eight—Defamation*

 To withstand a motion to dismiss, a complaint alleging defamation must include "facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Zoneraich v. Overlook Hospital*, 212 N.J.Super. 83, 101, 514 A.2d 53 (App. Div.), *cert. denied*, 107 N.J. 32, 526 A.2d 126 (1986). However, "[i]t is not necessary that every allegation of slander contain a verbatim transcription of the words spoken, accompanied by an exhaustive narrative of the circumstances and an accounting for the damages." *Kotok Building v. Charvine*, 183 N.J.Super. 101, 105, 443 A.2d 260 (Law Div. 1981).

 In her First Amended Complaint, plaintiff merely alleged that "[d]efendants undermined the authority of the plaintiff as well as questioned her methodology and altered patient charts to omit consults [sic] that were necessary. As a direct and proximate result of the actions of the defendants, the plaintiff has been defamed." First Amended Complaint, ¶¶ 54–55; *see also* Proposed Complaint, ¶¶ 53, 56.

In her Proposed Complaint, plaintiff additionally alleged that

> the defendants made false statements within the hospital as well as to other individuals in the medical field practicing in the same geographic area, which indicated that Dr. Crawford's quality of care was below standard and that her methodology was somehow below standard and/or improper.

Proposed Complaint, ¶ 54.

While the First Amended Complaint fails to meet the *Zoneraich* test, the Proposed Complaint does. The plaintiff has identified the persons who allegedly made the defamatory statements—the defendants named in the complaint—and that these statements were made jointly, severally and in the alternative. The plaintiff also has sufficiently identified the defamatory words: the defamation included negative statements made by defendants about Dr. Crawford's quality of care and methodology. Moreover, the plaintiff has sufficiently identified the fact of

the publication of these statements in that they were made to individuals in the medical field practicing in the same geographic area.

Nonetheless, defendants contend that the absence of any dates for the alleged defamation is fatal to plaintiff's claim by preventing the application of the New Jersey statute of limitations. *See National Bowl–O–Mat Corp. v. Brunswick Corp.*, 264 F.Supp. 221, 226 (D.N.J.1967); *see also* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1309, at 698 (2d Ed.1990) ("[I]n libel and slander suits the time and place of the publication of the alleged defamatory matter should be specifically stated in the complaint.").

Plaintiff alleges that the defamatory "statements were made during the time of plaintiff's employment and continued well beyond the point of which [sic] the plaintiff was terminated from her employment." Proposed Complaint, ¶ 55.

Plaintiff's employment ended in August, 1991, but she did not file her complaint until October 30, 1992. Plaintiff admits that at least some of the allegedly defamatory statements were made during her employment with defendants. Proposed Complaint, ¶ 55. The New Jersey statute of limitations for slander and defamation is one year. N.J.S.A. 2A:14–3. Thus, any claims relating to statements made before October 30, 1991 are barred by the statute of limitations.

 Were Count Eight solely a claim for defamation, an action could not lie. However, the Proposed Complaint adds a claim for trade libel. Proposed Complaint, ¶¶ 56–57. Trade libel requires malicious interference with a party's business by publishing defamatory statements. *Id.* at 526. It is a claim which "is not for the type of personal damages usually flowing from a libel and slander action. Rather, it is for damages to plaintiff's business by virtue of the failure of others to deal or contract with the plaintiff. These damages affect plaintiff's business and right to earn a living." *Id.* at 518.

Plaintiff specifically alleges that she was defamed "both personally and in her business pursuits" and that she "was prevented from finding other suitable employment and from pursuing her usual business pursuits long after she was terminated from her employment with defendants." Proposed Complaint, ¶¶ 56–57. Thus, in addition to defamation, plaintiff has stated a claim for trade libel.

In this case, the distinction between defamation and trade libel is critical because while the one year statute of limitations applies to defamation, it does not apply to trade libel. *See Vaccaro Constr. Co. v. DePace*, 137 N.J.Super. 512, 518, 349 A.2d 570 (Law Div.1975).[7]

Both the First Amended Complaint and the Proposed Complaint inadequately plead a claim for defamation. Accordingly, Count Eight of the First Amended Complaint relating to defamation is dismissed for failure to state a claim, and leave to amend Count Eight as to the defamation claim is denied.

Plaintiff has stated a claim for trade libel in her Proposed Complaint. Accordingly, leave to amend Count Eight to include a trade libel claim is granted.

### 5. *Count Nine—Negligent Infliction of Emotional Distress*

In her Proposed Complaint, plaintiff amended Count Nine to withdraw her negligent infliction of emotional distress claim against West Jersey Physician, Michael Stone, Stephen Colemeco, M.D., Stephen Musci, D.O., Carol Delfaus, M.D., David Wurtzel, M.D., Gloria Durelli, M.D., and Stephanie Chiupeck, M.D. Defendants do not challenge this amendment. Accordingly, leave to amend Count Nine is granted.

### B. *Federal Arbitration Act*

Relying on federal law, as well as an arbitration provision contained in plaintiff's employment agreement, defendants ask the court to stay this action pending arbitration.[8]

---

7. Although no court has identified the statute of limitation applicable to trade libel, a six year statute of limitations appears appropriate. *See* N.J.S.A. 2A:14–1.

8. Defendants also argue in the alternative that state law warrants a stay of the action. N.J.S.A. 2A:24–1, *et seq.* Because the court finds that

The Federal Arbitration Act ("FAA") provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ..., the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

For the FAA to apply, the district court must find that the contract containing the arbitration provision "evidenc[es] a transaction involving commerce." [9] 9 U.S.C. § 2; *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108–09 (3d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 61 (1984). This is not a rigorous inquiry; in fact, the contract "need have only the slightest nexus with interstate commerce." *Maxus, Inc. v. Sciacca*, 598 So.2d 1376 (Ala.1992); *accord Snyder v. Smith*, 736 F.2d 409, 417 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984) ("involving commerce" requirement "must be construed broadly").

Furthermore, the Supreme Court has indicated that Section 3's requirements are met where contractual activity facilitates or affects commerce, even tangentially. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401–02 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

Defendants WJHS, WJPA, and Newborn Pediatric, treat patients who live and work in Pennsylvania. Affidavit of Michael Stone, Executive Director of West Jersey Medical Services, ¶ 2. Medical costs for many of these patients are paid through out-of-state or multi-state insurance carriers. *Id.* at ¶ 3. Defendants advertise regularly in out-of-state newspapers. *Id.* at ¶ 5. In addition, defendants receive goods and services from numerous out-of-state vendors, including Hartford Life and Accident (Boston, Mass.), Ohio Psychology Publishing, and Weyman Advertising (New York). *Id.*

Because Dr. Crawford's employment facilitated defendants' interstate business activities, the court finds that her employment agreement "evidences a transaction involving commerce."

The next issue confronting the court is whether employment agreements are covered by the FAA. Plaintiff argues vociferously that they are not.

Section 1 of the FAA excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the scope of the FAA.[10] 9 U.S.C. § 1. Since the FAA's enactment, circuit courts have split over whether this exception applies to *all* employment contracts, or only those contracts involving a class of workers actually engaged in interstate commerce. *Compare Miller Brewing Co. v. Brewery Workers Local Union*, 739 F.2d 1159, 1162 (7th Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985) (citations omitted) (adopting narrow reading of § 1's exclusionary clause); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972) (same); *Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir.1971) (same); *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers*, 207 F.2d 450 (3d Cir.1953)

federal law provides the requested remedy, there is no need to address the state law issue.

**9.** The FAA defines "commerce" as, *inter alia*, "commerce among the several States." 9 U.S.C. § 1.

**10.** Section 1, in pertinent part, provides that: [C]ommerce, as herein defined, means commerce among the several States or with foreign nations, or in any territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

9 U.S.C. § 1.

(same) *with Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305 (6th Cir.1991) (adopting broad reading of § 1's exclusionary clause); *United Electrical, Radio & Mechanical Workers v. Miller Metal Prods.,* 215 F.2d 221, 224 (4th Cir.1954) (same). *See also Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 36, 111 S.Ct. 1647, 1657, 114 L.Ed.2d 26 (1991) (Stephens, J., dissenting) ("In my opinion, arbitration clauses contained in employment agreements are specifically exempt from coverage of the FAA.")

The Supreme Court has thus far declined to resolve the conflict. In *Gilmer,* the plaintiff, a securities broker, sued her employer under the ADEA after being fired. *Gilmer, supra.* As a condition of employment, plaintiff had been required to register with the New York Stock Exchange. *Id.* at 22–23, 111 S.Ct. at 1650–51. The Securities Registration Form required arbitration of any dispute between the broker and his employer. *Id.*

The *Gilmer* Court expressly found that the Registration Form was not a "contract for employment." *Id.* at 24 n. 2, 111 S.Ct. at 1651 n. 2. The Court then noted that:

Several *amici curiae* ... argue that [§ 1 of the FAA] excludes from the coverage of the FAA all 'contracts of employment.' ... [I]t would be inappropriate to address the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained in a contract of employment. The FAA requires that the arbitration clause being enforced be in writing. *See* 9 U.S.C. §§ 2, 3. The record before us does not show, and the parties do not contend, that Gilmer's employment agreement with [his employer] contained a written arbitration clause. Rather, the arbitration clause at issue is in Gilmer's securities registration application, which is a contract with the securities exchanges, not with [the employer]. The lower courts addressing the issue uniformly have concluded that the exclusionary clause in § 1 of the FAA is inapplicable to arbitration clauses contained in such registration applications....

Unlike the dissent, we choose to follow the plain language of the FAA and the weight of authority, and we therefore hold that § 1's exclusionary clause does not apply to Gilmer's arbitration agreement. Consequently, we leave for another day the issue raised by *amici curiae.*

*Id.*

Unlike the Supreme Court, the Third Circuit squarely addressed the issue in *Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers,* 207 F.2d 450 (3d Cir. 1953). Examining the legislative history and plain language of Section 1, the court held that Congress intended to except "only those ... classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." *Id.* at 452.

However, the court notes that recent Third Circuit *dicta* undercuts the force of *Tenney.* In *Pritzker,* without citing to any authority, the court noted that " 'contracts of employment' are explicitly exempted from the FAA." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1119 (3d Cir. 1993). At another point, the court opined "that the FAA by its own terms does not apply to employment contracts." *Id.* at 1120 (citing 9 U.S.C. § 1). Given the passage of time since *Tenney,* and the *Pritzker dicta,* it would be wise to reexamine the scope of Section 1's exclusionary clause.

Plaintiff relies heavily on *Willis v. Dean Witter Reynolds, Inc.,* in which the Sixth Circuit, in *dicta,* found that employment contracts fall outside the scope of the FAA. 948 F.2d 305 (6th Cir.1991). The court based its finding on two grounds. First, it noted the incongruity in construing the term "commerce" in Section 1 narrowly while construing it expansively in Section 2.[11] *Id.* at 310–11. Second, citing portions of the legislative history, the court concluded that Congress intended to limit the FAA to "merchant to merchant" contracts, thereby excluding "employer to employee" contracts.[12] *Id.* at 311.

---

**11.** *See supra* (discussing broad construction of "commerce" in Section 2).

**12.** For example, *Willis* cites to the statement of the chairman of the ABA committee responsible for drafting the bill: The FAA "is not intended

The reasoning in *Willis*, while tenable, proves less compelling than the following statutory analysis:

> Although at first glance it might seem likely that Congress would have intended "commerce" to have the same meaning through the [FAA], the reference to "workers engaged in foreign or interstate commerce" in § 1 would be surplusage if it were simply coextensive with Congress' powers under the commerce clause. Under *Southland Corp.*, § 2 gives the [FAA] as a whole the same reach as Congress' commerce clause power. Therefore, if Congress had wanted to excluded [sic] *all* employment contracts from the [FAA], it could simply have said "employment contracts" and left it at that. Any workers beyond the reach of the commerce clause would not be covered by the [FAA] in the first place. The language of § 1 also reinforces this view; the reference to "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," suggests that Congress intended to refer to workers engaged in commerce *in the same way* that seamen and railroad workers are.

*DiCrisci v. Lyndon Guar. Bank of New York*, 807 F.Supp. 947, 953 (W.D.N.Y.1992); *see also Miller Brewing Co. v. Brewery Workers Local Union, supra; Erving v. Virginia Squires Basketball Club, supra; Dickstein v. duPont, supra; Tenney Engineering, Inc. v. United Electrical Radio & Machine Workers, supra*, employing a similar statutory analysis.

[to] be an act referring labor disputes, at all. It is purely an act to give the merchants the right or privilege of sitting down and agreeing with each other as to what their damages are, if they want to do it. Now that is all there is in this." *Willis*, 948 F.2d at 311 (quoting Hearings on S.4213 and S. 4214 Before the Subcomm. on the Judiciary, 67th Cong. 4th Sess. 9 (1923)). *Compare Tenney*, quoting a report from that same ABA committee:

> Objections to the bill were urged by Mr. Andrew Furuseth as representing the Seamen's Union, Mr. Furuseth taking the position that seamen's wages came within admiralty jurisdiction and should not be subject to an agreement to arbitrate. In order to eliminate this opposition, the committee consented to an amendment to Section 1 as follows: "but nothing herein contained shall apply to contracts of

Moreover, the weight of authority weighs against the *Willis dicta*. In addition to the Third Circuit, the First, Second, and Seventh Circuits have all held that Section 1's exclusionary clause is "limited to workers employed in the transportation industries." *See Miller Brewing Co. v. Brewery Workers Local Union*, 739 F.2d at 1162; *Erving v. Virginia Squires Basketball Club*, 468 F.2d at 1069; *Dickstein v. duPont*, 443 F.2d at 785. The court finds no reason to diverge from *Tenney* and the weight of authority, and thus holds that plaintiff's employment agreement falls within the scope of the FAA. *See Hull v. NCR Corp.*, 826 F.Supp. 303, 306–07 (E.D.Mo.1993).

■ The next issue for the court to consider is whether the arbitration provision contained in the employment agreement encompasses the dispute at bar. To resolve this issue, the court must apply the "federal substantive law of arbitrability," which directs that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)).

■ Plaintiff contends that statutory claims of age and gender discrimination "were clearly not contemplated" by the arbitration provision.[13] The court disagrees.

employment of seamen, railroad employees or any other class of workers engaged in foreign or interstate commerce."
207 F.2d at 452 (quoting 48 Am.Bar Ass'n Rep. 287 (1923)).

13. To the extent plaintiff argues that ADEA, Title VII, and NJLAD claims cannot be arbitrated, plaintiff is mistaken. *Gilmer* clearly established that ADEA claims are arbitrable. Moreover, in the wake of *Gilmer*, it is well-established that Title VII claims are also subject to arbitration. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992); *Mago v. Shearson Lehmann Hutton, Inc.*, 956 F.2d 932 (9th Cir. 1992); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991). Nor are NJLAD claims exempted from arbitration.

■ The language of the arbitration clause clearly encompasses plaintiff's ADEA and Title VII claims. The arbitration clause pertains to "any dispute . . . regard[ing] the interpretation or performance of any part of this Agreement." Agreement, ¶ 12. The gist of Counts One through Five is that plaintiff was unlawfully terminated; in other words, defendants failed to perform their part of the agreement. As plaintiff herself alleges in the complaint:

> 21. Throughout the time in which the plaintiff was employed by defendants, West Jersey Physician Associates, P.A., West Jersey Health Systems, Voorhees Division, and Newborn Pediatric Associates, plaintiff was employed pursuant to an employment agreement in which the defendant [sic] would only be terminated for cause.

> 22. *Contrary to the employment agreement*, the plaintiff was effectively and wrongfully terminated in August 1991.

First Amended Complaint, ¶¶ 21–22 (emphasis added). Clearly, then, Counts One through Five fall within the purview of the arbitration clause.[14]

■ The last question for the court is whether the remainder of the action should be stayed. Where significant overlap exists between parties and issues, courts generally stay the entire action pending arbitration. *See Tenneco Resins, Inc. v. Davy Intern.*, 770 F.2d 416 (5th Cir.1985); *American Home Assur. Co. v. Vecco Concrete Constr. Co.*, 629 F.2d 961 (4th Cir.1980); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir.1973); *Harman Elec. Const. Co. v. Consolidated Eng. Co.*, 347 F.Supp. 392, 397 (D.Del.1972).

See Steck v. Smith Barney, Harris Upham & Co., 661 F.Supp. 543, 548 (D.N.J.1987).

14. Agency and contract principles enable courts to consider nonsignatories as parties to the arbitration provision. *Hartford Financial Systems, Inc. v. Florida Software Services, Inc.*, 550 F.Supp. 1079, 1086 (D.Me.1982), *appeal dism'd*, 712 F.2d 724 (1st Cir.1983). Although Musci is not a signatory to the Agreement, Musci is alleged to have acted as an agent for West Jersey Physician. Accordingly, Count Five must be arbitrated as well.

■ The claims against West Jersey Physician involve many of the same factual and legal issues as those against the other defendants. Moreover, all of the parties are either fellow West Jersey Physician employees or corporate entities related to West Jersey Physician. In the interest of judicial efficiency, the court declines to proceed against Michael Musci, D.O., on Count Five, and against any of the defendants, including West Jersey Physician, named in Counts Seven and Eight.[15] Accordingly, the entire action will be stayed pending arbitration on Counts One through Three and Count Five.

## III. CONCLUSION

(1) Defendants' motion to dismiss the complaint is **GRANTED IN PART, AND DENIED IN PART,** in that:

(a) Counts One through Three are dismissed as to defendants Newborn Pediatric Associates and West Jersey Health Systems (Voorhees Division);

(b) Count Four is dismissed for failure to state a claim;

(c) Count Five is dismissed as to all defendants *except* Michael Musci, D.O.;

(d) Count Six is dismissed for failure to state a claim;

(e) Count Eight is dismissed as to the defamation claim;

(f) the motion to dismiss is denied in all other respects;

(3) Plaintiff's motion for leave to amend is **GRANTED IN PART,** as follows:

(a) Counts One and Two, to add a claim under the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1, *et seq.*, and to delete the claim under 42 U.S.C. § 1983;

Note, however, that because the remaining state law claims (Counts Eight and Nine) allege trade libel and infliction of emotional distress, they fall outside the scope of the arbitration provision, and are thus non-arbitrable as to all of the defendants.

15. Earlier in this opinion, the court dismissed Counts One through Three as to West Jersey Health and Newborn Pediatrics, Count Four in its entirety, Count Five as to all defendants except Michael Musci, D.O., Count Six in its entirety, and Count Eight as to the defamation claim.

(b) Count Seven, to withdraw the claim of tortious interference as to Stephen Colemeco, M.D., Michael Stone, and West Jersey Physician;

(c) Count Eight, to add a trade libel claim;

(d) Count Nine, to withdraw the claim of negligent infliction of emotional distress against West Jersey Physician, Michael Stone, Stephen Colemeco, M.D., Stephen Musci, D.O., Carol Delfaus, M.D., David Wurtzel, M.D., Gloria Durelli, M.D., and Stephanie Chiupeck, M.D.;

(4) And **DENIED IN PART,** in that leave to amend Count Eight to more specifically plead a claim for defamation is **DENIED;** and

(5) Defendants' motion to stay the action pending arbitration is **GRANTED,** in that:

(a) Counts One through Three, and Count Five, will be arbitrated pursuant to the Arbitration Agreement between West Jersey Physician, its agent, Michael Musci, D.O., and plaintiff Crawford; and

(b) The remainder of the action is stayed pending arbitration of Counts One through Three, and Count Five.